## P. A. McCRAY AND ANOTHER v. SAM J. BUTTELL AND ANOTHER.[1]

July 15, 1921.

No. 22,407.

**Specific performance — complaint good.**

1. The complaint stated a cause of action for specific performance.

**Part owner, who without authority contracts for the other owners, may be compelled to convey his interest.**

2. Where the vendor, for himself and as agent for the other part owners, contracts to convey the entire property, but in fact lacked

[1] Reported in 184 N. W. 191.

authority to execute the contract on behalf of the other part owners, the vendee may require him to perform the contract to the extent of conveying his own interest in the property on receiving a proportionate part of the purchase price, unless it be shown that the lack of authority in the vendor was known to the vendee when he executed the contract.

**Findings supported by evidence.**

3. The evidence sustains the finding that defendant executed the contract on behalf of all the owners, and the finding that plaintiffs had no knowledge of his lack of authority to do so.

**Estoppel against defendant.**

4. Defendant cannot take advantage of special instructions given to his agent which were not communicated to plaintiffs.

Action in the district court for Stevens county for specific performance of a contract and to recover $10,000. The case was tried before Flaherty, J., who made findings as stated on page 490, infra, and directed judgment as stated on the same page. From an order denying his motion to amend the findings and conclusions or for a new trial, Samuel J. Buttell appealed. Affirmed.

*Neil M. Cronin,* for appellant.

*James B. Ormond,* for respondents.

TAYLOR, C.

William Buttell and Samuel J. Buttell were brothers and were the owners as tenants in common of a farm of 320 acres in Stevens county. William Buttell died intestate in November, 1918, and his interest in the farm passed to and vested in his widow and three minor children. They removed to the state of Nebraska. Samuel continued to operate the farm and was appointed administrator of William's estate. He desired to sell the farm and had a conversation with his brother's widow in which she told him to list it for sale. They seem to have had no understanding or agreement concerning either price or terms. On May 3, 1919, Samuel listed the farm for sale with Joseph J. Gaffney, a real estate agent residing at Morris, the county seat. Gaffney negotiated a sale to plaintiffs, and prepared a contract, dated June 7, 1919, in which "Samuel J. Buttell, a single man, * * * ——Buttell, widow of William Buttell, and Samuel J. Buttell as agent for the heirs of

William Buttell, deceased," were named as parties of the first part, and the plaintiffs were named as parties of the second part, and by which the parties of the first part sold and agreed to convey the farm "unto said parties of the second part, or their assigns, by deed of warranty, upon the prompt and full performance of said parties of the second part of their part of this agreement."

The contract fixed the purchase price at the sum of $37,120, being at the rate of $116 per acre. The farm was encumbered by a mortgage for $16,000. The purchasers were to assume this mortgage, and were to pay $2,000 at the execution of the contract and $4,000 on or before March 1, 1920. When the payment of $4,000 was made, the parties of the first part were to execute and deliver a warranty deed of the property, and the purchasers were to execute a mortgage back in the sum of $15,120 for the balance of the purchase price, the mortgage to be due on or before March 19, 1924, and to bear interest at the rate of 6 per centum per annum from March 1, 1920. The contract was prepared in triplicate. The plaintiffs executed the three copies on June 7, 1919, and at the same time delivered to Gaffney their checks for the sum of $2,000, the amount of the initial payment. Thereafter, and on the same day, the defendant executed the three copies personally, and also as agent for the heirs of William Buttell. Thereupon Gaffney delivered to him two copies of the contract and the checks for the initial payment, and subsequently delivered the other copy of the contract to the plaintiffs. Defendant sent the two copies of the contract, which he received, to William's widow for her signature. He cashed the checks for the initial payment and deposited $1,000 thereof to the credit of his own bank account and $1,000 thereof to the credit of the bank account of William's estate. He gave Gaffney two checks of $320 each—one drawn on his own bank account, and the other drawn by him as administrator on the bank account of William's estate—to apply on Gaffney's commission for making the sale. William's widow returned the two copies of the contract forwarded to her without her signature and refused to agree to the sale. Defendant took the matter up with Gaffney on the theory that she might consent to the sale, if the payment of March 1, 1920, was substantially increased and Gaffney induced plaintiffs to agree to increase the amount of that payment to the sum of

$10,000, but she also rejected this proposition. Thereafter defendant informed plaintiffs that he was unable to carry out the contract and tendered back the initial payment of $2,000 which they refused to accept. On March 1, 1920, plaintiffs tendered to defendant the sum of $4,000, the amount of the payment due on that date, and demanded a deed. Defendant refused to receive the money or execute a deed, and plaintiffs brought this action for specific performance of the contract.

The court found, in substance, among other things, that defendant executed the contract "individually and as agent for the heirs of William Buttell;" that he had refused to carry out the contract in any manner; "that plaintiffs have duly performed all the conditions of said contract on their part to be performed up to the making of the March 1, 1920, payment which they have duly tendered, and are ready, willing and able to carry out and perform their part of said agreement;" that defendant had no authority to execute the contract on behalf of the heirs of William Buttell, deceased, of which fact plaintiffs had no notice or knowledge, and that, at the trial, plaintiffs had expressed a desire to take the interest of defendant in the property with an abatement of the purchase price, if they could not obtain the entire property.

The court directed judgment to the effect that upon the payment by plaintiffs of one-half the amount of the cash payments specified in the contract and the execution by them of a mortgage in accordance with the terms of the contract for one-half the amount of the deferred payment, defendant should be required to perform the contract to the extent of conveying his undivided one-half interest in the property by warranty deed, subject to the encumbrances against the property, and with a provision in the deed by which plaintiffs assumed one-half of such encumbrances. The order also contained proper provisions in respect to interest, in respect to the application of the payment already made, and in respect to other matters not necessary to mention. Defendant made a motion for amended findings or for a new trial and appealed from the order denying it.

1. At the trial defendant objected to the admission of any evidence under the complaint on the ground that it failed to state a cause of action, and urges that the court erred in overruling this objection.

"Upon such an objection every reasonable intendment will be indulged in favor of the sufficiency of the complaint * * * The objection will be overruled if the complaint can be sustained by the most liberal construction." 2 Dunnell, Minn. Dig. § 7687..

Giving the complaint the liberal construction required by the rule under such circumstances, we think it stated a cause of action for specific performance, and we fail to see wherein any incompleteness in its statements resulted to the prejudice of defendant.

The complaint alleged that plaintiffs had duly performed all the conditions of the contract on their part. It further alleged that they had tendered payment of the $4,000 on March 1, 1920, and that they were still ready and willing to pay the purchase price on receiving a full warranty deed. Defendant argues that the general allegation of performance by plaintiffs is limited by the specific allegation that they had tendered payment of the $4,000 instalment, and that it cannot be assumed that they had executed, or offered to execute, the mortgage for the deferred instalment, or had assumed, or offered to assume, the existing mortgage. Conceding without deciding, that this contention is correct, the allegations were, nevertheless, sufficient under long established rules. Lewis v. Prendergast, 39 Minn. 301, 39 N. W. 802; Minneapolis, St. P. & S. S. M. Ry. Co. v. Chisholm, 55 Minn. 374, 57 N. W. 63; Blunt v. Egeland, 104 Minn. 351, 116 N. W. 653; Murray v. Nickerson, 90 Minn. 197, 95 N. W. 898. The tender of the instalment of $4,000 was all that plaintiffs were required to do before the execution of the deed, and the complaint shows sufficiently that they were ready to perform on their part.

2. Defendant contends that "where the vendee knew, at the time of entering into the contract, of the vendor's incapacity to give him the entire estate, he cannot have specific performance as to the vendor's interest with abatement of the price," and cites numerous authorities in support of this proposition.

It is doubtless the general rule that, where the vendee enters into the contract, knowing that there is a portion of the property, or an interest therein, which the vendor can neither convey nor cause to be conveyed, he cannot compel a conveyance of so much of the property as the vendor is able to convey with an abatement of the purchase price for

the deficiency, and that, if he elects to enforce specific performance under such circumstances, he must pay the full purchase price and rely upon the covenants in his deed for reimbursement for any loss resulting from defects in his title. But where the vendor contracts on his own behalf in respect to his interest in the property and on behalf of the other part owners in respect to their interests therein, and is thereafter unable to convey the entire property, or cause it to be conveyed, for the reason that he lacked the power to bind such other part owners, the vendee may require him to convey his own interest in the property on receiving a proportionate part of the purchase price, unless it be shown that the vendee made the contract with knowledge that the vendor was not authorized to act for such other part owners. Melin v. Woolley, 103 Minn. 498, 115 N. W. 654, 946, 22 L.R.A.(N.S.) 595. The authorities are considered and the rules which govern in such situations are pointed out in that case.

In the present case defendant contracted on his own behalf and as agent for the heirs of William. He in fact acted without authority in making the contract as agent for the heirs of William, but the court found that plaintiffs had no notice or knowledge that he lacked such authority. We think the evidence is ample to sustain this finding and that the case falls within the rule applied in the Melin case.

Defendant insists that, in order to bring the case within this rule, it must appear that he represented that he possessed the authority which he assumed to exercise; that it is conceded that he never met plaintiffs nor had any correspondence with them until after the contract had been repudiated by William's widow; and that consequently he could have made no representations to them. We think that his execution of the contract as agent for the heirs of William was a sufficient representation that he had authority to act for them. No claim is made that plaintiffs had any knowledge as to William's heirs or as to defendant's right to represent them, except such as was given by the contract itself. The contract, without giving her first name, designated the widow of William as one of the parties of the first part,

and defendant urges that this fact and the fact that the contract was not signed by her was notice to plaintiffs that it was incomplete and brings the case within the rule applied in Stub v. Grimes, 38 Minn. 317, 37 N. W. 444. She was one of the heirs of William under the statute. When the contract was delivered to plaintiffs it had been executed by defendant as agent for all these heirs and purported to be complete, and we think that naming the widow as a party to the contract, in the recitals therein, was not sufficient to require the court to find that plaintiffs were chargeable with notice that defendant lacked authority to act for her.

3. Defendant also questions the authority of Gaffney to deliver the contract to plaintiffs. Defendant took two copies of the contract executed by plaintiffs and took the checks for the initial payment and cashed them. He could hardly expect to receive this money and an obligation binding plaintiffs without giving them an obligation binding him. Moreover Gaffney was his agent, and, if there was any understanding between them that the contract was not to be delivered to plaintiffs until it had been signed by the widow of William, and the weight of evidence is to the contrary, there is no claim that plaintiffs had any knowledge of such understanding.

We are convinced that the trial court disposed of the case correctly and the order appealed from is affirmed.