(No. 31651.—

RALPH MADIA, Appellant, *vs.* GRACE PARMLY COLLINS *et al.,* Appellees.

*Opinion filed January 18, 1951—Rehearing denied March 19, 1951.*

ROLAND V. LIBONATI, of Chicago, (MYER H. GLAD-STONE, and IRA D. SCHULTZ, of counsel,) for appellant.

TENNEY, SHERMAN, ROGERS & GUTHRIE, of Chicago, (S. ASHLEY GUTHRIE, and JOHN P. FORESTER, of counsel,) for appellees.

Mr. JUSTICE DAILY delivered the opinion of the court:

This is a direct appeal by Ralph Madia, the plaintiff, from a decree of the circuit court of Cook County which dismissed for want of equity his bill to compel specific performance of an alleged written contract to convey certain business real estate located at 442-44 South State Street in Chicago. Named as defendants were Grace Parmly Collins and Clara Parmly, whom the complaint described as the "owners in fee simple" of the property; the Continental Illinois National Bank and Trust Company of Chicago, individually and as trustee, alleged to "claim an interest" in the premises; and Robert White, a real-estate broker, alleged to be the duly authorized agent of the other defendants for the sale of property. No evidence was heard in the cause, but rather the trial court based its decree of dismissal upon the complaint and answers, and upon the parties' motions for summary judgments together with the supporting and opposing affidavits. When it became apparent that Clara Parmly, named as a defendant, had been deceased for many years before the date of the contract sued upon, and held no title to the real estate, the suit abated and was dismissed as to her.

The pleadings and affidavits in the record disclose that in August, 1949, title to the property was in Grace Parmly Collins, a resident of Clayton, Missouri, who owned an undivided one-half interest, and in the bank, which held the remaining one-half as trustee under the will of Clara Parmly, deceased. The defendant White managed and supervised the property for the owners. During the above month, all parties interested resolved to sell the premises for $50,000 or more, and White was told to find a buyer. It is clear that this was the extent of his agency. All correspondence relating to the proposed sale indicates that it was the intention and desire of both owners to sell their entire interest by a joint sale, and in conjunction with each other. After preliminary conversations with the bank

and White, which are not essential to this opinion, plaintiff, on October 6, 1946, signed an agreement to purchase the property for $50,000, and paid $5000 earnest money to White. The agreement, which was prepared by George Sutton, an employee of White, purported to be for the entire title, which the "seller" agreed to convey to the purchaser by "trustees and warranty deeds." The agreement, which was a printed form, did not contain the name of the owners or sellers, and throughout referred to the "seller" in the singular, despite the fact that there were co-owners of the property. The instrument provided that: "Acceptance of this offer in writing hereon by the Seller shall constitute a contract," leaving little doubt that it constituted only an offer by the plaintiff until signed by the "seller."

In his affidavit, Sutton deposed that he explained to plaintiff and his broker, Solon, that the premises were owned by the bank as trustee, and by an individual owner who lived out of town, and that the offer would have to be submitted to both for consideration. Plaintiff denies that he was informed or knew of the bank's interest, or that he had been told that the offer would have to be submitted to the bank.

After plaintiff signed the offer and paid his earnest money, Sutton took the papers to the bank; however, it refused to act upon them until they had been submitted to Mrs. Collins. Sutton mailed the offer to her; called her attention to their August correspondence in which she had stated a price of $50,000 was acceptable, and asked that she and her husband sign the agreement and return it to him. The signatures were affixed and the offer returned to Sutton without further correspondence. The offer was again submitted to the bank, which, on October 14, 1949, formally notified Sutton that the plaintiff's offer was rejected. Notice of the rejection was communicated to Solon (and later to plaintiff) who accepted a return of the earnest money check. A few days later plaintiff returned the check

to Sutton and made a formal demand for delivery of the property, and when it was refused he commenced this action on October 20, 1949.

In his complaint, plaintiff alleged that on October 6, 1949, he had signed a written agreement prepared by White, by which he had agreed to purchase the real estate from Grace Parmly Collins, Clara Parmly and the bank for $50,000; that White was the agent of the other defendants and was authorized to sell and complete a contract of sale for the property; that plaintiff had deposited $5000 earnest money with White and later tendered the balance of the purchase price, but defendants refused to convey the property. He asked for specific performance of the agreement and that the defendants convey good title to him by "Trustees and Warranty Deeds." No copy of the agreement to purchase was contained in, or attached to, the complaint, nor was there any allegation that the agreement had been signed by or in behalf of any of the alleged owners of the property.

During the course of the proceedings in the trial court, and after it became apparent that Grace Parmly Collins and her husband had signed the agreement, plaintiff orally prayed as alternative relief, that the Collinses be compelled to convey their undivided one-half interest to plaintiff, upon a proportionate abatement and payment of the purchase price. Such relief was denied by the trial court, which held that the offer had been made to both owners of the property, that acceptance of both was necessary to the formation of a contract, and dismissed the complaint for want of equity. The correctness of this ruling of the court, and its refusal to allow plaintiff to file an amended complaint embracing his theory that the Collinses should be compelled to convey their undivided one-half interest, are the only issues raised by the arguments presented to this court.

It is plaintiff's contention that Grace Parmly Collins and her husband entered into a binding contract when they

signed the written offer and returned it to their agent, and that equity will specifically enforce such a contract against their undivided one-half interest. In making this contention plaintiff completely abandons the theory contained in the allegations of his complaint, namely that he signed an agreement to purchase the entire title from the owners of the property. Some argument is made that the offer ran only to Mrs. Collins because the agreement to purchase did not name the seller, and because the term "seller" was used in the singular throughout the agreement. We agree with the trial court that the word "seller," as used in such a printed form of agreement, must, in the absence of fraud or misrepresentation, be construed as a collective designation of the owners of the premises, where there is more than one owner, and where the offer is for the entire title. Plaintiff intimates that he had no knowledge that there was more than one owner; however, his actions and the allegations of his complaint do not bear him out. He and Solon approached the bank, offering to buy the premises, before they ever went to White; he signed an agreement to purchase in which was inserted a typewritten provision that title would be conveyed to him by "Trustees and Warranty Deeds;" and in his complaint he asked that the "owners" convey to him by "Trustees and Warranty Deeds," exactly as provided in the agreement he signed. It is obvious that plaintiff knew with whom he was dealing; that he was not misled as to the ownership; and that his offer of purchase was made to both owners for the entire title. Without the signature of both owners, no contract was formed, and there could be no breach upon which plaintiff could base an action for specific performance. (*James* v. *Darby*, 100 Fed. 224; *Carnell* v. *Kinser*, 196 S.W. 2d 941.) One cannot have specific performance in such case where the contract contemplates the sale of all the interests in the property contracted for, or none. *Spadoni* v. *Frigo*, 307 Ill. 32.

Plaintiff construes the decisions in *Moore* v. *Gariglietti,* 228 Ill. 143; *Baker* v. *Puffer,* 299 Ill. 486; *Kuhn* v. *Sohns,* 324 Ill. 48, and *Work* v. *Welsh,* 160 Ill. 468, as supporting his contention. The rule of those cases is stated in the *Moore case* as follows: "Courts of equity will not deny specific performance of a part of a contract which is capable of being performed, because the contract, as a whole, is not capable of performance. [Citations.] An agreement by one tenant in common to convey the whole of the joint property cannot be enforced against his cotenants, but may be enforced as to his interest in the premises. [Citations.]" An examination of those cases indicates that the application of the rule presupposes a binding contract, which existed in all the cases cited. In the *Moore case,* which is the only one cited having any factual similarity to the instant case, the offer of purchase was made to only one of several cotenants and was unconditionally accepted by her, thus creating mutual obligations between the parties. In the present case, the record shows that plaintiff's offer was made to all cotenants, and by its express terms could not ripen into a contract, until all accepted the offer. Stated differently, in the *Moore case* there was an offer to, and attempted sale by, less than all the owners of the real estate, while in the present case we have an offer to, and attempted sale by, all the owners of the real estate. In the *Moore case* acceptance by the partial owner was sufficient to establish a contract between the seller and the purchaser; in the instant case a contract could not exist until the offer was accepted by all the owners to whom it was made.

As succinctly stated in 154 A.L.R. in the note at page 778, "One cannot, with correctness, say, abstractly, that a contract signed by less than all of the intended, or desired, vendors, is binding on the signers, or that it is not so binding; the whole problem is one of intention of the parties as disclosed in the particular negotiations and in the instru-

ment presented for signature." An examination of the record in such light indicates that the defendant owners intended that the entire title was to be sold, that plaintiff intended that his offer to purchase embrace all interests or none, and that the contract negotiations were carried on in that plane. When all the cotenants failed to accept the offer, no binding contract was formed as to any of the interests in the land. In the absence of a contract there could have been no breach, thus the trial court properly dismissed the complaint for want of equity, and properly denied leave to file an amended complaint.

*Decree affirmed.*