KENNETH JASPERSON, appellee, v. LAURA A. KELLEY BOHNERT
et al., appellants.

No. 48150.

(Reported in 55 N.W.2d 177)

1276

J. Robert Lewis, of Muscatine, Howard P. Eckerman, of Davenport, and Donnelly, Lynch, Lynch & Dallas, of Cedar Rapids, for appellants.

E. C. Halbach, of Clinton, for appellee.

MULRONEY, C. J.—The basic facts in this case are without dispute in the record. Laura Bohnert, Josephine McLeon and Lloyd Barclay inherited a farm from their mother, share and share alike. In August 1950 the plaintiff, with full knowledge that the farm was owned by three people, signed and placed in the hands of a realtor a real-estate contract for the purchase of the farm. The contract was the usual form and it named the three co-owners as parties of the first part as vendors and plaintiff as vendee. It described the farm and the stated consideration was $27,000, $3000 in cash and the balance of $24,000 on or before March 1, 1951. It provided the parties of the first part were to execute and deliver an abstract showing good and merchantable title and party of the second part was to have possession on March 1, 1951, and the right to plow stubble land in the fall of 1950. Plaintiff's check for $3000 with the name of the payee in blank was pinned to the contract.

The broker took the contract to the women and they signed it and gave it to the broker with instructions to take it to their brother, Lloyd Barclay, and try to get him to sign it. When the broker took the contract to Lloyd Barclay, he at first asked for a few days to think it over, but when the broker came back

he refused to sign and the contract was never signed by him, nor were the terms of it assented to by him. The broker delivered the contract, with the women's signatures thereon, to plaintiff and he brought suit on the contract in the nature of specific performance for the women's two-thirds interest in the farm, tendering two thirds of the purchase price, or $18,000. The trial court held the contract was valid insofar as the two-thirds interest of the sisters was concerned and decreed they should deliver abstract showing good and merchantable title and deeds to their one-third interest each, and plaintiff should pay $9000 to each of them.

I. Plaintiff contends the case calls for the application of the familiar rule of equity that specific performance of a part of a contract will not be denied because the contract as a whole is not capable of performance. The most frequent application of the rule is where the vendor makes a contract to sell land as though he were the owner but merely has an interest therein and therefore cannot convey complete title, or where the vendor represents himself as clothed with authority to bind his co-owner and it later develops he did not have such authority. In such a case the vendor can be compelled to convey whatever interest he has in the land. If the purchaser did not know, at the time the contract was made, the seller's interest was partial or that he lacked authority to bind a co-owner, the purchaser will be compensated by an abatement in the agreed price. Anderson v. Weirsmith, 209 Iowa 714, 229 N.W. 199. But if, at the time the contract was entered into, the purchaser did know the vendor would be able to convey only a partial interest, the courts generally hold the purchaser cannot compel specific performance or conveyance of the vendor's partial interest with an abatement in the agreed price. Larson v. Kearney, 110 N. J. Eq. 561, 160 A. 514; 58 C. J., Specific Performance, section 59; 49 Am. Jur., Specific Performance, section 106; annotation 154 A. L. R. 767 at page 774.

All of the foregoing rules, like all rules governing specific performance, presuppose the existence of a contract. When only some of the co-owners of realty sign a contract to sell that is in the name of all the contract is incomplete and it cannot be

specifically enforced against those who sign as to their partial interests, at least in the absence of testimony showing all of the parties considered they would be so bound at the time the contract was signed. The contract here sued upon shows three co-owners as the intended parties of the first part. The only possible intention to be gleaned from the instrument is that the parties contemplated all three should sign before there would be a completed contract. The purchaser who signed first in effect made an offer to buy the whole interest of the named vendors in the farm. The offer is to purchase the joint interest of all and it requires a joint acceptance by all the named co-owners signing the instrument before any contract comes into existence.

The instrument in this case is the usual form of a real-estate contract, founded upon mutual covenants. It could hardly be argued that a prospective purchaser's mere act of signing such an instrument and presenting it to the vendors for their signatures would bind him to purchase undivided interests if only some sign. Here the plaintiff-vendee did not testify and there is no evidence of any communication or act of plaintiff which would indicate he would be bound to purchase less than the whole interest. This is not to say there must be mutuality of remedy in specific performance. Text writers and courts have long disagreed upon the present necessity for, and application of, the old common-law rule requiring mutuality of remedy in specific performance actions. See annotation 22 A. L. R.2d 508. All authorities agree there must be mutuality of obligation in contracts founded on mutual covenants. The lack of such mutuality means there is no contract that can be enforced. The only signer to this instrument who did testify said she understood it to be an all or nothing contract. True she does state she was interested in getting her money for her share but it is clear she did not feel she would get it by signing this contract unless her brother signed also.

In Axe v. Potts, 349 Pa. 345, 348, 37 A.2d 572, 574, 154 A. L. R. 764, two of three co-owners of real estate executed an agreement of sale to convey entire fee and the court held the contract was incomplete and did not satisfy the statute of frauds, the opinion stating: "* * * the agreement designated three per-

sons as the owners, and when executed by only two of them was patently incomplete. The agreement was not joint and several, but joint only, and we cannot substitute for the terms therein set forth the terms of a new and different contract."

In Stout v. Porritt, 250 Mich. 13, 17, 229 N.W. 409, 411, three of four co-owners of real estate signed the contract. The court denied specific performance or conveyance of the signers' individual interest on payment of the proportionate purchase price, the opinion stating:

"According to its terms, all the vendor's obligations were to bind all those named as parties of the first part, and all its vendor's benefits to accrue to all of them. There was no separation or severance as to parties, estate, or obligation. The contract stated accurately the understanding of the parties who signed it. It was to have been a joint contract by all the vendors named to convey the whole estate."

In Madia v. Collins, 408 Ill. 358, 362, 97 N.E.2d 313, 316, it is held: "Without the signature of both owners, no contract was formed, and there could be no breach upon which plaintiff [vendee] could base an action for specific performance. [Citing cases.] One cannot have specific performance in such case where the contract contemplates the sale of all the interests in the property contracted for, or none."

Many other cases similar to the decisions quoted from above can be found in the annotation in 154 A. L. R. 767 at page 779, and for some later decisions see Morris v. Wilson, 187 Md. 217, 49 A.2d 458, and Williams v. Bush, 197 Miss. 793, 20 So.2d 706. The only cases we can find, holding such contracts divisible and enforceable against some co-owners when all do not sign, are two decisions of the Texas Court of Appeals, Ward v. Walker, 159 S. W. 320, and Hays v. Marble, 213 S.W.2d 329. These cases seem to proceed on the theory that there is no inequity or injustice in requiring those who sign to perform as far as they are able. A later decision of the same court, Dittoe v. Jones, Tex. Civ. App., 220 S.W.2d 315, seems to hold the first inquiry in such a case is whether there is a contract to purchase the signing co-owner's interest. With evidence by the purchaser

that he did not intend to purchase a portion, the court held there was no meeting of the minds and the purchaser was denied specific performance on the ground there was no contract. At any rate, the overwhelming weight of authority is that such real-estate contracts, in usual form, reciting the names of co-owners as vendors are joint and if all do not sign those who do are not bound, at least in the absence of other testimony indicating the parties considered the contract several.

We hold no contract was established by the record in this case upon which a decree for specific performance could be based. The trial court's decree set aside a subsequent contract for the sale of this property. It is not necessary to discuss this portion of the decree for all of plaintiff's rights end with our holding that he had no contract for the purchase of the farm or any interest in it. The trial court also ordered partition. This portion of the decree also falls with the holding that plaintiff has no interest in the realty. All of the decree entered by the trial court is reversed and the cause is remanded for decree dismissing plaintiff's petition.—Reversed and remanded.

All JUSTICES concur.