## PALMER J. HAUGLAND AND ANOTHER v. IVER A. CANTON AND OTHERS.

84 N. W. (2d) 274.

July 12, 1957—No. 37,094.

246

*Haugland & Abdo* and *H. G. Haugland,* for appellants.
*Nelson & Oyen* and *Thomas G. Lovett, Jr.,* for respondents.

DELL, CHIEF JUSTICE.

In this action plaintiffs seek specific performance of an alleged oral contract for the sale of real estate, or if that relief be denied, then for damages for breach of contract. The case was tried by the court without a jury. Plaintiffs appeal from a judgment denying specific performance and awarding to them only the value of certain seed furnished by the plaintiffs.

The following facts appear from unchallenged findings and hence must be taken as true.[1] Defendants were the owners of certain farm lands in Chippewa County, each having an undivided interest therein.

[1]Gamble-Skogmo, Inc. v. St. Paul Mercury Ind. Co. 242 Minn. 91, 64 N. W. (2d) 380; Land O' Lakes Dairy Co. v. County of Wadena, 229 Minn. 263, 39 N. W. (2d) 164, affirmed, 338 U. S. 897, 70 S. Ct. 251, 94 L. ed. 552.

In March 1955, following preliminary negotiations, plaintiffs made an oral offer to two of the defendants, Adolph and John Canton, to buy this farm for $41,000. These two defendants at that time advised the plaintiffs that acceptance of the offer would depend and be conditioned upon all of the owners agreeing to sell for this price. They further informed the defendants that they could not give a definite answer until they had conferred with the other owners. About a week later Adolph Canton orally advised plaintiffs that all the owners had agreed to accept the $41,000 offer. The plaintiffs then arranged certain credit with the Federal Land Bank and deposited with it an additional amount to make up the full purchase price. All of the defendants except two, Philip and Percival Canton, signed a deed to the farm. About the middle of May, the plaintiffs were advised that these two defendants would not sign the deed.

In further findings, challenged by the plaintiffs, the trial court found that no valid contract resulted from the negotiations; that the partially executed deed was never delivered and conveyed no interest since the signatures were affixed on condition that all of the owners sign the same; and that there was no part payment nor tender of the purchase price.

■ There appears to be no substantial conflict in the testimony regarding the negotiations between the plaintiffs and Adolph and John Canton. The difficulty arises, rather, from the different interpretations by the parties of the legal consequences resulting from these negotiations. When the plaintiffs made their offer and Adolph and John advised them that acceptance would depend on the agreement of the other owners to sell, it is possible a contract could have been concluded at that point between the plaintiffs and these two defendants with performance conditioned on the agreement of the other defendants,[2] but the trial court found that no such contract was created at that time and the evidence sufficiently permits such finding and construction. In fact, it does not appear that plaintiffs urged such a construction of the negotiations, relying rather on the contention that, at that point, there was merely an offer to purchase which was later

---

[2]See, 1 Corbin, Contracts, § 83.

accepted by all of the defendants.[3]

There being no contract at this point, was there a later acceptance of the plaintiffs' offer so as to create a binding contract for the sale of the farm? Since an acceptance must comply in all respects with the requirements of the offer,[4] inquiry must be directed to the exact nature of the plaintiffs' offer. The trial court described the offer as one "to buy all of the" lands involved. This language, standing without qualification, is susceptible of two possible interpretations, viz.: That the offer was to buy *all or nothing* or, to buy *all or any part*. However, the court further found that Adolph and John informed the plaintiffs that acceptance was conditioned on *all* of the defendants agreeing to the sale.[5] Whether this be considered a clarification of the language of the original offer,[6] or in the nature of a counteroffer,[7] it appears obvious that the plaintiffs agreed to this condition as a part of their offer. It is clear from the evidence that it was always understood by all of the parties, throughout the negotiations before and after the offer, that there was to be no sale of any kind unless all the defendants agreed

---

[3]The fact that the plaintiffs do not challenge the finding in which the court characterizes this stage of the negotiations as a mere offer would preclude plaintiffs from urging such an interpretation on this appeal. See footnote 1, *supra.*

[4]Minar v. Skoog, 235 Minn. 262, 50 N. W. (2d) 300; Lewis v. Johnson, 123 Minn. 409, 143 N. W. 1127, L. R. A. 1915D, 150; Kileen v. Kennedy, 90 Minn. 414, 97 N. W. 126; Langellier v. Schaefer, 36 Minn. 361, 31 N. W. 690.

[5]As succinctly stated in Massee v. Gibbs, 169 Minn. 100, 104, 210 N. W. 872, 874:

"* * * One may condition his entry into contract relations as he sees fit, resorting even to absurdity if he chooses."

[6]See 1 Corbin, Contracts, § 86, which states:

"* * * It is not a variation if the offeree merely puts into words that which was already reasonably implied in the terms of the offer."

[7]See 4 Dunnell, Dig. (3 ed.) § 1740, which states:

"* * * A proposal to accept, or an acceptance, upon terms varying from those offered, is a rejection of the offer, and puts an end to the negotiation, *unless the party who made the original offer renews it, or assents to the modification suggested.*" (Italics supplied.)
See, also, 1 Corbin, Contracts, §§ 21, 22.

to the sale and all signed the deed. Plaintiff Paul Haugland testified that his offer was "For the entire farm" and that he never discussed or even considered the possibility of buying the interest of any one particular person. He further testified that John Canton said, in response to his offer, that "he would have to talk it over with the rest of the family" and that John and Adolph "had to have everybody's approval." The problem involves the construction and interpretation of the manifestations of the parties, particularly the offeror.[8] The matter was resolved by the trier of fact and its findings and construction have overwhelming evidentiary support.

■ Since the court found that the offer was one for the purchase of the entire farm, we come to the question of whether or not there was the required acceptance of this offer by all the defendant owners. The court found that Adolph advised the plaintiffs that all the defendants had agreed to the price. However, unless Adolph was the agent of the other owners, his statements made to the plaintiffs did not constitute an acceptance by the other defendants. The court also found that Adolph and John were not authorized to contract on behalf of Philip and Percival Canton, the two nonsigning defendants and this finding is amply supported by the evidence. There is no evidence that these two owners ever authorized Adolph or John to act in their behalf regarding the sale of the property. Adolph and John denied that they were ever so authorized and plaintiffs, on the oral argument, conceded that neither Adolph nor John were the agents of Philip or Percival. Plaintiffs' position appears to be that all of the defendants did, in fact, express their acceptance of plaintiffs' offer to Adolph to be communicated by him to the plaintiffs. Such method and procedure could result in a

---

[8]See Annotation, 154 A. L. R. 767, where it is stated on authority:

"* * * where the attempted contract is for a sale by two or more persons comprising, or supposed to comprise, all of the owners, and one or more does not sign, or at least fails to become actually bound * * *, the basic inquiry is whether, as a matter of construction of the intention of the parties, there is any contract at all. Frequently such transactions are construed as mere attempts to contract, in which event all actions and suits based on the allegation of a contract entered into necessarily fail."
See, also, Jasperson v. Bohnert, 243 Iowa 1275, 55 N. W. (2d) 177, and Madia v. Collins, 408 Ill. 358, 97 N. E. (2d) 313, quoted *infra*.

contract.[9]

The trial court, however, found that Philip and Percival never, in fact, accepted or agreed to the plaintiffs' offer and were not parties to the oral purported acceptance of the offer by Adolph, and this finding is well supported by the evidence. Philip testified that at no time did he agree to sell the farm. He said that there had been a prior understanding and agreement between all of the defendants that they would not sell the farm as long as their mother, Martha Canton, was alive and that, when he was approached with the suggestion that the farm be sold, he merely indicated that he and his brother Percival "would go along with it [the sale] providing we had some assurance from mother that that is what she wanted." He further testified that the day the deed was sent to him he went out to see his mother and that "one of the first things she said was 'I feel so bad that the farm had to be sold' and, naturally, I told her it hasn't been sold, and in the face of that, why, Percy and I were definitely not in favor of it" and, therefore, they decided not to accept the offer. The fact that Mrs. Canton, the mother, did eventually sign the deed because "she didn't want to cause any trouble in the family" is not controlling since Philip and Percival had the absolute right to determine to their own satisfaction whether or not their mother was subjectively agreeable to the sale. Clearly this direct evidence is sufficient to support the court's finding that Philip and Percival never accepted the offer.

■ Nor did the signing of the deed by the defendants, other than Philip and Percival, add anything to plaintiffs' position. The court found that there was no delivery of the deed and further that the signatures were affixed on condition that all of the defendants sign, a condition which was never satisfied. Either of these findings renders the

---

[9]See 12 Am. Jur., Contracts, § 39, which states:

"* * * Anything that amounts to a manifestation of a formed determination to accept, communicated or put in the proper way to be communicated to the party making the offer, would doubtless complete the contract."
17 C. J. S., Contracts, § 45, states:

"* * * If a person sends an offer by an agent, notice of acceptance given to that agent is sufficient, and this is also true of notice sent to a person whom the offerer has designated to receive it."

deed invalid for any purpose,[10] and the record sufficiently supports both findings. A review of the testimony of the defendants makes it clear that the signatures were affixed to the deed on the same condition as the assent to the offer, namely, that the deed was to have effect only if all agreed to and signed it.

■ It is obvious in the light of the particular nature of the offer that, since there was no acceptance by all of the defendants, there was, therefore, no acceptance by any one of the defendants and no contract arose as between any of the parties.

■ The conclusion which we have reached also disposes of plaintiffs' request for specific performance against the defendants who conditionally agreed to the sale and signed the deed. The plaintiffs, in their claim for specific performance as to the defendants who signed the deed, rely on the well-recognized rule that, where a coowner contracts, either as the alleged sole owner or as agent for the other owners, to convey a larger interest than he possesses, the vendee is entitled to specific performance of whatever interest the coowner possesses with a proportionate abatement of the purchase price.[11] However, this rule has several important qualifications. The primary requisite for the application of the rule is the existence of a valid binding contract between the purchaser and the coowner against whom the partial specific performance is sought.[12] Since no contract was ever created in the instant case this rule can have no application.

■ While Adolph's position is somewhat different from the other defendants', it was always made clear to the plaintiffs that his acceptance too was conditioned on the acceptance of the offer by the other owners. Consequently there was, therefore, no actual acceptance in fact by him. While he did advise the plaintiffs that the other defendants had agreed to the offer, plaintiffs have not chosen to proceed on any legal

---

[10]See, 5 Dunnell, Dig. (3 ed.) §§ 2662, 2675.

[11]Melin v. Woolley, 103 Minn. 498, 115 N. W. 654, 946, 22 L. R. A. (N. S.) 595; McCray v. Buttell, 149 Minn. 487, 184 N. W. 191; see 17 Dunnell, Dig. (3 ed.) § 8779.

[12]Jasperson v. Bohnert, 243 Iowa 1275, 55 N. W. (2d) 177, and Madia v. Collins, 408 Ill. 358, 97 N. E. (2d) 313, quoted *infra*. See, also, other cases cited at footnote 18.

theory by which his conduct might constitute an acceptance in law.[13] It is not unlikely that plaintiffs' position in this respect was adopted by them because Adolph obviously acted in good faith,[14] his belief being founded on an innocent but faulty interpretation of the other defendants' statements to "Bobby," a son of one of the signing defendants, without knowledge of the true facts.[15] Or perhaps plaintiffs were aware that their own conduct, in choosing to rely on Adolph's beliefs and statements rather than obtaining firsthand information themselves of the assent of the other defendants, might well require them to share the responsibility for such reliance.[16] In any event, since such a theory was neither presented to nor ruled upon by the court below nor suggested on this appeal, and since it clearly does not appear as a matter of law, there is no occasion to consider such a theory here.[17]

The general problem presented by this appeal is not unique, and we have the benefit of prior judicial reasoning.[18] Similar arguments and authorities were presented in Jasperson v. Bohnert, 243 Iowa 1275, 1277, 55 N. W. (2d) 177, 178, where the court stated:

"All of the foregoing rules [regarding partial specific performance by a coowner], like all rules governing specific performance, presuppose the existence of a contract. * * * The only possible intention * * *

---

[13]See, 19 Am. Jur., Estoppel, § 148.

[14]Adolph readily admitted at the trial that he had so informed the defendants, stating:

"I got that *impression* from the talk with Bobby [John Canton] that everybody *was agreeable and willing to sign the deed."* (Italics supplied.)

[15]See, Froslee v. Sonju, 209 Minn. 522, 297 N. W. 1; Schaefer v. Nylin, 162 Minn. 170, 202 N. W. 439; 6 Dunnell, Dig. (3 ed.) §§ 3190, 3193; 31 C. J. S., Estoppel, § 70. But, see, 6 Dunnell, Dig. (3 ed.) § 3190, note 90.

[16]See, 31 C. J. S., *Estoppel*, § 75. If a person *is content to rely on oral* hearsay representations as to his substantial economic and legal rights, and act on such representations, he may well be required to bear the risk of any resulting loss.

[17]See, 1 Dunnell, Dig (3 ed.) § 384.

[18]See, e. g., Jasperson v. Bohnert, 243 Iowa 1275, 55 N. W. (2d) 177; Madia v. Collins, 408 Ill. 358, 97 N. E. (2d) 313; Malir v. Maixner, 174 Kan. 26, 254 P. (2d) 282; Spadoni v. Frigo, 307 Ill. 32, 138 N. E. 226; Stout v. Porritt, 250 Mich. 13, 229 N. W. 409; Raney v. Barnes Lbr. Corp. 195 Va. 956, 81 S. E. (2d) 578.

is that the parties contemplated all three [of the owners] should sign before there would be a completed contract. * * * The offer is to purchase the joint interest of all and it requires a joint acceptance by all the named co-owners * * * before any contract comes into existence."

In Madia v. Collins, 408 Ill. 358, 362, 97 N. E. (2d) 313, 316, where a like matter was presented, the court stated:

"* * * Without the signature of both owners, no contract was formed, and there could be no breach upon which plaintiff could base an action for specific performance. * * * One cannot have specific performance in such case where the contract contemplates the sale of all the interests in the property contracted for, or none. * * *

"* * * An examination of those cases [regarding partial specific performance by a coowner] indicates that the application of the rule presupposes a binding contract, which existed in all the cases cited. * * *

"* * * the defendant owners intended that the entire title was to be sold, that plaintiff intended that his offer to purchase embrace all interests or none, and that the contract negotiations were carried on in that plane. When all the cotenants failed to accept the offer, no binding contract was formed as to any of the interest in the land."

■ Plaintiffs next contend that, since a money judgment was ordered, the court should have allowed costs, disbursements, and interest. The matter of costs is controlled by M. S. A. 549.07 which provides that in equitable actions costs are discretionary with the trial court. Although there is but one cause of action in this state covering both legal and equitable remedies, this section applies where the remedy prayed for is historically a function of equity.[19] Clearly the complaint in the instant case was directed primarily toward equitable relief. Simply because damages were awarded on a relatively collateral issue did not change the basic nature of the action since, when a court of equity once acquires jurisdiction, it will grant full relief, including damages.[20] There was no abuse of discretion in the award here.

M. S. A. 549.04 provides for the allowance of disbursements to the "prevailing party." By no reasonable concept of the result of this action

[19]See, Wallrich v. Hall, 19 Minn. 329 (383).
[20]See, 6 Dunnell, Dig. (3 ed.) § 3138.

can plaintiff be regarded as the prevailing party. A review of the record shows that the money judgment was awarded to plaintiffs, not because they prevailed, but because they lost. It is not uncommon in an equitable action to have certain phases of relief directed against all parties. We are compelled, by the realities of the situation, to hold that a court sitting as a court of equity may determine, in its discretion, who is the prevailing party. As stated in 20 C. J. S., Costs, § 8:

"* * * in determining this question [of who is the prevailing party] the general result should be considered, and inquiry made as to who has, in the view of the law, succeeded in the action."[21]

In the instant case there clearly was no abuse of this discretion.[22] Once the "prevailing party" is determined, it may be doubtful that the same discretion provided for in M. S. A. 549.07, relating to costs, applies. However, this problem is not before us now.[23]

Plaintiffs contend that they should be awarded interest from the date of the order for judgment, which they contend is March 12, 1956, until the date that judgment was finally entered on July 27, 1956. As we read the record, the order for the money judgment was not made until July 10, 1956, following decision on plaintiffs' motion for an amended order for judgment. This would indicate that this item of interest involves approximately $1.32. We cannot condone the presentation of points of this kind. We, therefore, exercise our judicial privilege of invoking the maxim of "de minimis non curat lex."[24]

Finally plaintiffs contend that the court erred in relation to the title to certain crops which were grown on the farm. Their argument is

---

[21]See, also, 20 C. J. S., Costs, §§ 10, 11, p. 279.

[22]Compare Butler v. Butler, 188 Minn. 632, 249 N. W. 38, in which this court, in an action previously characterized as one in the nature of a bill for instructions (Id. 180 Minn. 134, 135, 230 N. W. 575, 576), awarded costs and disbursements to an unsuccessful party without reference to any applicable statute and without discussion.

[23]Cf. Van Meter v. Knight, 32 Minn. 205, 20 N. W. 142.

[24]See, Thompson v. Pollack (abstract opinion), 322 Ill. App. 73, 53 N. E. (2d) 737; Phillips v. Green, 288 Ky. 202, 155 S. W. (2d) 841; Hopkins v. Kitts, 37 Mont. 26, 94 P. 201; Brady v. Ranch Min. Co. 7 Cal. App. 182, 94 P. 85.

entirely dependent on their constructive possession of the farm. Plaintiffs did have certain conversations with the tenants who were in actual possession of part of the farm and plaintiffs furnished certain seed to them apparently in expectation of the sale. Plaintiffs construe this as attornment by the tenants to them. A review of the findings, aided by consideration of the trial court's memorandum,[25] indicates that the court was of the opinion that there never was such constructive possession. The court stated in its memorandum:

"While Paul Haugland furnished $1,000 in seed which the landlord was required to furnish under the lease, it is clear that Cantons never completely surrendered possession or control of the premises or the lease thereon."

The evidence supports such conclusion. The circumstances under which the seed was furnished was described by Adolph as follows:

"It was getting towards spring work and *if we were going to make the sale,* why, he would like to have some say about the plantings on the farm, and we couldn't give him possession of it because it was already leased for the coming year." (Italics supplied.)

There is other language which might be consistent with a surrender of possession but this appears to be occasioned by nontechnical use of the word "possession." The only conclusion consistent with the findings, conclusions of law, and memorandum is that plaintiffs never were in possession and furnished the seed simply in anticipation of becoming the landlords. Since they never were in possession of the land, actually or constructively, and never became the owners, their argument and contention, pertaining to the title to the crops, must fail.

The other arguments of the plaintiffs have been carefully considered but are not of sufficient importance to require discussion.

Affirmed.

---

[25]A memorandum may properly be considered as throwing light on the decision. Baker v. Polydisky, 144 Minn. 72, 174 N. W. 526.