OPINION. Turnee, Judge: Section 2035 of the Internal Revenue Code of 1954 provides as follows: SEO. 2035. TRANSACTIONS IN CONTEMPLATION OP DEATH. (a) General Rule. — The value of the gross estate shall include the value of all property (except real property situated outside of the United States) to the extent of any interest therein of which the decedent has at any time made a transfer (except in ease of a bona fide sale for an adequate and full consideration in money or money’s worth), by trust or otherwise, in contemplation of his death. (b) Application op General Rule. — If the decedent within a period of 3 years ending with the date of his death (except in ease of a bona fide sale for an adequate and full consideration in money or money’s worth) transferred an interest in property, relinquished a power, or exercised or released a general power of appointment, such transfer, relinquishment, exercise, or release shall, unless shown to the contrary, be deemed to have been made in contemplation of death within the meaning of this section and sections 2038 and 2041 (relating to revocable transfers and powers of appointment) ; but no such transfer, relinquishment, exercise, or release made before such 3-year period shall be treated as having been made in contemplation of death. Tbe parties agree that the above section of the Code is applicable and that if the decedent made the gifts in question in contemplation of death they are includible in his gross estate. With respect to the transfers of the homes to the Cloutiers and the Grays, respondent claims the gifts were not consummated until the mortgage releases were made and recorded on June 11, 1956, just prior to the decedent’s death on September 17, 1956. If such is the case, the transfers must, unless shown to the contrary, be decreed to have been made in contemplation of death. It thus appears that if respondent is correct, then not only is his determination of the deficiency presumed to be correct, but there is the additional specific statutory presumption as quoted above. Petitioner is required by this statutory presumption to carry the burden of proving that the transfers were not made in contemplation of death. McCaughn v. Real Estate Land Title & Trust Co., 297 U.S. 606; O’Neal’s Estate v. Commissioner, 170 F. 2d 217; Humphrey’s Estate v. Commissioner, 162 F. 2d 1, certiorari denied 332 U.S. 817; McClure v. Commissioner, 56 F. 2d 548, certiorari denied 287 U.S. 669; and First Trust & Deposit Co. v. Shaughnessy, 134 F. 2d 940, certiorari denied 320 U.S. 744. On the other hand, petitioner contends that these two gifts were consummated more than 3 years prior to the death of the decedent. Petitioner first took the position, as shown in the estate tax return and also in the original petition filed in this case, that the gifts were consummated on April 12, 1953, when the “mortgage debts” were “forgiven” by the decedent and his wife in executing the satisfactions of the mortgages and acknowledging payment of the debts secured by the mortgages. Petitioner’s position was changed at the trial herein, and it is now argued that the gifts were consummated upon the transfers of title to the properties in question, in the case of the Cloutiers in 1951 (the deed was recorded December 4, 1951), and in the case of the Grays in 1952 (their deed being recorded March 12, 1952). In either position, the dates precede the 8-year period ending with the death of the decedent, and at both times the decedent, insofar as he knew, was in good health. We are of the opinion that the decedent and his wife made inter vivos gifts when the respective homes were transferred to and received by the Cloutiers in 1951 and by the Grays in 1952. The essentials of an inter vivos gift in each instance were present. That is to say, there were capacity and intention to make a gift, an irrevocable present transfer of title, dominion, and control, delivery, and valid acceptance by the' donees. Adolph Weil, 31 B.T.A. 899, affd. 82 F. 2d 561, certiorari denied 299 U.S. 552. Eespondent contends that the decedent held strings to both transfers when in March 1953, he received from his respective daughters and their husbands their notes and mortgages, which strings were to continue until his death, at which time the gifts would be completed by the recording of the executed satisfactions by the attorney in whose hands they were placed for safekeeping. This, he argues, shows that the donees did not have dominion and control over their respective properties and that the decedent’s compelling motive was associated with death rather than with life. In answer to petitioner’s argument that the notes and mortgages were nullified for lack of consideration, respondent states that the advancement of funds for the acquisition of the properties created an indebtedness and the preexisting indebtedness in each case was the consideration. The record shows that the decedent and his wife gave “homes” to their daughters and their husbands without any obligation or intention for the latter to pay for them. The Cloutiers for more than a year and the Grays for approximately a year had title to, possession of, and dominion and control over their respective homes. After the passage of that much time the notes and mortgages were executed in the view of all parties that to the extent of the homes involved such action would protect the daughters and their families from liabilities that might arise against them and that the homes would be preserved to them. If such purpose could be said to be consideration, or if the consideration could be said to be love and affection, the record is quite clear that no consideration in money or money’s worth passed between the parties and that at no time was any indebtedness intended. It has been held that where a woman gave a benefactor a mortgage in the amount of money he paid to her for the services she had rendered, so as to protect her home from the importunities of her husband, the mortgage was not enforcible by the executor of the benefactor’s estate because the mortgage was executed without consideration. Colt v. McConnell, 19 N.E. 106. Here, as in Colt v. McConnell, the mortgages were not executed to secure any sum of money paid, but for an entirely different purpose, that of securing to the daughters and their families their homes and protecting them from liabilities that might arise against them. Whether the execution of the notes and mortgages could have successfully served the purpose intended, we need not decide, since we have found as a fact that the decedent and his wife made the inter vivos gifts to the Cloutiers and the Grays at the times the transfers of the respective properties were made, and that the making of the gifts was not in contemplation of death. As to the $9,000 gift to the Etems in June 1956, 3 months prior to the death of the decedent, we are of the opinion that the gift was made in contemplation of death. While it might have been understood that all three daughters would be given homes at some time by their parents, the fact is that the third daughter and her husband understood they would not be given a home until he got out of the Navy and they had settled down and were able to have a home. Although Maurice Etem was discharged from the Navy in 1954, and he and Carol were living in Lakewood, California, in June 1956, there is no showing as to why the gift was not made prior to the date it was made. At the time it was made decedent was practically bedridden, in a worsened condition from his cancerous disease, and apparently aware that his death was imminent. The timing of the gift was so closely related to decedent’s impending death that we are unable to say here that the compelling motive in making the gift was associated with life rather than death. Respondent is sustained on this issue. Decision will be entered wider Bule SO.