DAVID P. BROTZLER AND ARLISS J. BROTZLER, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Brotzler v. Commissioner
Docket No. 13010-79.
United States Tax Court
T.C. Memo 1982-615; 1982 Tax Ct. Memo LEXIS 129; 44 T.C.M. (CCH) 1478; T.C.M. (RIA) 82615; October 21, 1982. *129 Held, under the facts petitioners did not make a completed gift of land to the United States. Jerrold M. Hartke, for the petitioners. Sue A. Nelson, for the respondent. WHITAKER
MEMORANDUM FINDINGS OF FACT AND OPINION WHITAKER, Judge: Respondent determined deficiencies in petitioners' income taxes as follows: Year
Deficiency
1975
$6,188.00
1976
2,694.00
On their 1975 return, petitioners' claimed a charitable contribution deduction under section 170 [1] based upon a contribution of real property to the United States Government in that year, with a carryover into the year 1976 of that part *130 of the contribution which exceeded the maximum allowable in 1975. Petitioners have now conceded that the contribution was not effective in 1975 but claim that the contribution was effective for Federal tax purposes during the year 1976. The sole issue for decision is whether or not there was a gift of land in 1976 by petitioners to the United States. FINDINGS OF FACT Some of the facts have been stipulated and are so found. The parties have stipulated that petitioners were residents of Minnesota at the time of the filing of the petition in this case. Petitioners' returns for the two years involved were filed on the cash basis. From 1968 to the date of trial of this case, petitioners have owned a parcel of property (Sand Lake property) consisting of 16-1/2 acres located on Big Arrow Head Island on Sand Lake, Minnesota. During 1972 Mr. Brotzler received from the Forest Service, Chippewa National Forest, United States Department of Agriculture, an inquiry as to whether or not he would be willing to sell the Sand Lake property to the United States. In 1975 Mr. *131 Brotzler indicated to the Forest Service a desire to donate the Sand Lake property to be added to an existing eagle preserve which was in use as a flyway and nesting site for wild eagles. Mr. Brotzler's letter stated in part: "My understanding is that your department would stake the corners and draw up a legal description of said property for my final approval, at which time, I would deed this property to the Forest Service." The Forest Service responded by stating that a boundary survey would be required before it could proceed further and noted some uncertainty as to one boundary line. In December 1975, Mr. Brotzler again reiterated his "firm commitment" to make the donation, advising that he would "execute a Warranty Deed" when prepared. In March 1976, the Forest Service sent to Mr. Brotzler a formal land donation offer, which petitioners promptly executed and returned. The offer, dated March 10, 1976, contained four conditions, that the Forest Service would prepare all necessary title evidence without expense to the donors, that it would prepare a deed and pay the recording fees, that the donors would satisfy all liens (including liens for taxes) up to the recording of the *132 deed to the United States and that the Forest Service would prepare a survey and boundary description "for the concurrence of the donors." Of more significance, however, is the following operative language of the offer: We, David P. Brotzler and Arliss J. Brotzler, husband and wife, of R.R. #2, Monticello, Minnesota, as owners, hereby offer to donate the following described land, situated in Itasca County, Minnesota, to the United States Forest Service, to be used for National Forest purposes: In August of 1976, the Forest Service advised petitioners that the survey was proceeding and that they should be able to furnish a deed to petitioners "for approval and signature" very soon. Also in that month, the proposed donation was approved by the Regional Forester and by the Director of Lands. The Regional Forester was thereupon authorized to proceed to complete the donation. There is no direct evidence as to other action by the parties in that year. In January 1977, the Forest Service wrote petitioners enclosing a plat, requesting petitioners to advise if the plat and description "appears acceptable," in which event a deed would be prepared for their signature. Finally, in October *133 of 1978, a formal deed was transmitted to petitioners for execution and petitioners were reminded of the necessity of paying property taxes. The parties stipulated that: 13. The petitioners' intended donation of the approximately 16 1/2 acres of land, as described in paragraphs 3 through 12, above, was never completed in that petitioners never executed a deed, warranty or otherwise, in favor of the USDA or the United States Government. Petitioners currently hold, and have continuously held, legal and equitable title to the approximately 16 1/2 acres of land in question since 1968. During 1978 petitioners were forced to place a mortgage on all of their real properties to secure a business loan. The property description used in the mortgage apparently included the Sand Lake property, but it was understood by the mortgagees that petitioners did not intend to place a lien on the Sand Lake property. The mortgage was finally foreclosed without a correction in the description, and in 1982 the Forest Service advised Mr. Brotzler that it was still willing to accept a donation of the property provided the title had not been impaired by the foreclosure sale. It appears that representatives *134 of the Forest Service went on the land on several occasions, both to observe the nesting of eagles and for boundary survey purposes, but on this record we do not find that dominion and control of the Sand Lake property ever shifted from petitioners to the United States Government. OPINION This Court has repeatedly held that the essential elements of a gift are: (1) a donor competent to make the gift; (2) a donee capable of taking the gift; (3) a clear and unmistakable intention on the part of the donor to absolutely and irrevocably divest himself of the title, dominion, and control of the subject matter of the gift, inpraesenti; (4) the irrevocable transfer of the present legal title and of dominion and control of the entire gift to the donee, so that the donor can exercise no further act of dominion or control over it; (5) a delivery by the donor to the donee of the subject of the gift or of the most effective means of commanding the dominion of it; (6) acceptance of the gift by the donee; * * *.[Weil v. Commissioner,31 B.T.A. 899, 906 (1934), affd. 82 F.2d 561 (5th Cir. 1936).] Accord, Estate of Hite v. Commissioner,49 T.C. 580, 594 (1968); *135 Guest v. Commissioner,77 T.C. 9, 16 (1981); Estate of Lynch v. Commissioner,35 T.C. 142, 150 (1960); Baxter v. Commissioner,T.C. Memo. 1982-515. For Federal income tax purposes, a contribution normally is deemed to be made at the time delivery is effected. Section 1.170A-1(b), Income Tax Regs. However, the regulation does not specify when delivery of a gift is to be considered effective for income tax purposes, and we look to state law concerning the date of delivery. See, e.g., Greer v. Commissioner,70 T.C. 294 (1978), affd. on another issue 634 F.2d 1044 (6th Cir. 1980); Aliota v. Commissioner,T.C. Memo. 1980-360. Under Minnesota law, the delivery of a deed is absolutely essential to the transfer of legal title to real property. Minn. Stat. Ann., sec. 513.04 (West 1947); Slawik v. Loseth,207 Minn. 137, 290 N.W. 228 (1940). [3] An undelivered deed conveys no title and is simply ineffective. Haugland v. Canton,250 Minn. 245, 84 N.W.2d 274 (1957); Yesnes v. Cooper,235 Minn. 356, 51 N.W.2d 67 (1952). *136 Prior to the execution and delivery of a deed (and, of course, its acceptance by the donee), the property remains within the dominion and control of the donor, in this case petitioners. Oehler v. Falstrom,273 Minn. 453, 142 N.W.2d 581 (1966); Rutchick v. Salute,288 Minn. 258, 179 N.W.2d 607 (1970); see, e.g., Johnson v. United States,280 F. Supp. 412 (N.D.N.Y. 1967). Thus, the proposed donation was simply proposed, nothing more. Petitioners failed to comply with essential requirements for the transfer (e.g., "delivery") of real property under Minnesota law and thus there was no gift under Federal tax laws.
Petitioners retained not only legal title but complete dominion and control over the Sand Lake property, with the continuing obligation *137 to pay Minnesota property taxes. The circumstances of the giving of the mortgage and its foreclosure, which may in fact have created a cloud on the title to this property, confirmed petitioners' dominion and control, notwithstanding their understood intent to exclude Sand Lake property from the lien of the mortgage. Irrespective of what petitioners in fact did, or refrained from doing, they had the power to dispose of the property free of any claim of the United States. [4] Petitioners are not helped by their action in reserving or attempting to reserve or exclude the Sand Lake property from the mortgage. Petitioners argue [5] that there was in effect a dedication of the land to the public by petitioners, based upon a constructive transfer of legal title and a constructive delivery. Petitioners emphasize their *138 continued willingness to sign a deed to the Sand Lake property and the presence of Government employees on the land from time to time both to survey the boundaries and to observe the nesting of the eagles. These facts do not, however, rise to the level of a completed gift. Under Minnesota law, in order for a parol gift to avoid the statute of frauds and constitute a valid transfer despite failure to make delivery of a deed, there must be delivery of possession, acceptance and such acts of improvement on the land in reliance on the gift as would make it a substantial injustice to hold the gift void. Henslin v. Wingnen,203 Minn. 166, 280 N.W. 281 (1938). Evenson v. Aamodt,153 Minn. 14, 189 N.W. 584 (1922). This equitable provision clearly does not apply to the facts of the present case, Haugland v. Canton,supra, and petitioners' constructive transfer and delivery argument is thus precluded by the statute of frauds. Minn. Stat. Ann. sec. 513.04. We emphasize again that dominion and *139 control was retained by petitioners long past the year 1976, and apparently up to the date of trial. The parties stipulated that petitioners retained both legal and equitable title. This record simply does not support petitioners' contentions that a completed gift was made in 1976 or at any other time. Neither has our attention been directed to any case which holds that lands have been dedicated to the public on these facts. Accordingly, we hold for respondent. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended.↩
3. Minn. Stat. Ann. sec. 513.04, a statute of frauds provision, provides in pertinent part that: No estate or interest in lands * * * nor any trust or power over or concerning lands * * * shall hereafter be created, granted, assigned, surrendered, or declared, unless by act or operation of law, or by deed or conveyance in writing, subscribed by the parties * * *.↩
4. In a letter dated March 22, 1982, a representative of the Forest Service advised Mr. Brotzler in part as follows: As I told you on the telephone, there is no chance the Forest Service would pursue legal action to force the fulfillment of the donation offer. A donation is made at the free will of the donor. If he changes his mind, our policy is to just drop the case.↩
5. Petitioners' counsel filed a trial memorandum but declined to file an original brief or a reply brief.↩