**J.A. REICHERT, et al., Appellant,**

v.

**UNION FIDELITY LIFE INSURANCE COMPANY, Respondent.**

No. C5–84–259.

Court of Appeals of Minnesota.

Jan. 15, 1985.

Thomas W. Wexler, Peterson, Engberg & Peterson, Minneapolis, for appellant.

Robert S. Cragg, Cragg & Bailly, Ltd., Minneapolis, for respondent.

Heard, considered and decided by FORSBERG, P.J., and SEDGWICK and LANSING, JJ.

## OPINION

FORSBERG, Judge.

This is an appeal from a judgment of dismissal and taxation of costs against appellant. Appellant American National Bank is the personal representative of the estate of May V. Wilson, who brought this action to recover on a hospitalization insurance policy. The action was dismissed for lack of prosecution and for noncompliance with a court order. We affirm.

## FACTS

May V. Wilson brought this action in December, 1976, to recover benefits she claimed were due her under a policy of hospitalization insurance with respondent Union Fidelity for a lengthy hospital stay in Nogales, Mexico. Wilson died in May, 1982.

Wilson was allegedly hospitalized at the Hospital Del Socorro from September 23, 1975, to December 29, 1975, under the care of a Dr. Nadir Zeinun. This hospital stay followed closely upon a similar hospitalization in Salt Lake City, Utah. Wilson had 46 policies of hospitalization insurance in effect at one time. Besides this action, she brought suit against a number of insurance companies on these policies, when payment of benefits was denied due to the large number of similar policies Wilson had in force.

Seven of these suits were brought in Hennepin County District Court, in addition to this action. Following initial discovery, these actions were consolidated for purposes of discovery and trial in June of 1978. Additional discovery, and special term motions, followed.

A pre-trial settlement conference was held on December 4, 1979. Following this conference, Wilson settled with all defendants except Union Fidelity and Mutual of Omaha (the Mutual of Omaha case, brought in the name of the trustee of a Wilson trust, J.A. Reichert, was settled after commencement of this appeal). The remaining cases were then set for trial the week of March 17, 1980.

The failure of efforts to take the deposition of Dr. Zeinun in Mexico, due to his refusal to be deposed, resulted in a motion by Wilson, on March 11, 1980, for a continuance. The trial court granted a continuance to the week of May 19, 1980, but ordered the deposition completed by May 12. The alleged violation of this order was one of the grounds for dismissal.

Union Fidelity submitted cross-questions for the Zeinun deposition, which was to be conducted from written interrogatories, but did not serve them on Wilson's attorney until May 2, 1980, ten days before the deadline. The interrogatories, however, to be posed to Zeinun by an Arizona court reporter, were not sent to Arizona until August 18, 1980. Meanwhile, the case was not reached for trial during the week of May 19, and the question of compliance with the deposition deadline did not arise.

There was a new trial setting for October 20, 1980. Neither this setting, nor a subsequent one, resulted in the case actually being called for trial. Zeinun, meanwhile, had refused in August, 1980, to answer any interrogatories.

Following a new trial setting, the case was called for trial on June 12, 1981. The court struck the case from the trial calendar, citing Wilson's unreadiness to proceed, due to failure to procure the Zeinun deposition. It is not clear that any efforts had been made to depose Zeinun since the previous August.

Union Fidelity moved for dismissal of the action in August, 1981, based on non-prosecution and noncompliance with the order setting a deposition deadline the previous year. Wilson's attorney opposed the motion, stating for the first time that Wilson was ready to proceed without the deposition. Nothing came of this motion.

There was no activity in the case for the following 18 months. Wilson claims this was because the parties were focusing on actions in federal district court raising the same issues and involving considerably more money. There is no information in the files as to these actions.

The motion for dismissal was renewed in March, 1983, resulting in the judgment of dismissal from which this appeal is taken.

### ISSUES

1. Was the dismissal an abuse of discretion?

2. Was the taxation of costs an abuse of discretion?

### ANALYSIS

*1. Dismissal*

■ An action may be dismissed with prejudice for a failure to prosecute, or for noncompliance with the Rules of Civil Procedure, or with an order of the court. Minn.R.Civ.P. 41.02(1). The determination of whether to dismiss is within the discretion of the trial court. *Scherer v. Hanson*, 270 N.W.2d 23 (Minn.1978). The supreme court, however, has noted that dismissal runs contrary to the primary objective of the law, which is to dispose of cases on their merits. *Firoved v. General Motors Corp.*, 277 Minn. 278, 283, 152 N.W.2d 364, 368 (1967). The primary factor to be considered is the prejudicial effect on the parties of such an order, or its denial. *Id.*

■ The general rule is that a case may not be dismissed for lack of prosecution until it has been called for trial. *Breza v. Schmitz*, 305 Minn. 537, 233 N.W.2d 559 (1975). Despite numerous trial settings,

this case was not called for trial until June 12, 1981.

Wilson's attorney claims that Union Fidelity was also unprepared to proceed to trial in June, 1981, and joined him in requesting a continuance. Union Fidelity's attorney claims that Wilson's attorney called him the day before and told him she could not proceed, and would seek a dismissal. The court's order reflects only Wilson's inability to proceed with trial.

■ The standard of review of a dismissal order requires this court to view the record in the light most favorable to the trial court's order. *Zuleski v. Pipella*, 309 Minn. 585, 245 N.W.2d 586 (1976). Thus, for purposes of review the failure to go to trial in June, 1981, must be attributed solely to Wilson.

■ Union Fidelity generally would have the burden of showing some prejudice of a substantial right or advantage will result if Wilson were allowed to reinstate the action. *Firoved*, 277 Minn. at 283–284, 152 N.W.2d at 368.

■ Under extraordinary circumstances, however, dismissal for lack of prosecution may be justified even though no prejudice to the defendant is shown. *Id.* at 283, 152 N.W.2d at 368. The court in *Firoved* recognized that

> * * * defendants are entitled to the weight of the policy which seeks to prevent unreasonable delays even in the absence of a showing of particular prejudice.

*Id.* at 284, 152 N.W.2d at 369.

We are not persuaded that demonstrable prejudice has been shown by Union Fidelity; however, under the circumstances of this case, the trial court was within its discretion in dismissing the action. Union Fidelity's defense relies heavily on legal argument, particularly the claim that Wilson's purchase of such a large number of policies constituted a "wagering contract," which is unenforceable as against public policy. Such a defense is not prejudiced by delay. Moreover, as to the defense on the factual issue of whether Wilson required

hospitalization, the critical testimony of Dr. Zeinun likely could not have been acquired by any practical means, and was not affected by the delay.

The extent of the delay, however, far exceeds that present in prior cases. The action had been pending for 6½ years when the dismissal motion was renewed in March, 1983. *Cf., Firoved* (15 months); *Breza v. Schmitz* (2 years, 10 months). A significant portion of this time, exceeding the total duration of the action in both *Firoved* and *Breza,* has occurred following the trial court's imposition of a deadline for obtaining the Zeinun deposition. While we do not believe the noncompliance with this order is grounds for dismissal, it was imperative for appellant, first, to obtain the deposition without delay, and then to proceed without it when it could not be obtained.

Considering both the extent of the delay and the reason for the delay, *see, Firoved,* 277 Minn. at 284, 152 N.W.2d at 369, there are extraordinary circumstances justifying dismissal without a showing of prejudice by Union Fidelity.

*2. Taxation of costs*

The trial court allowed costs in the amount of $287.46 to be awarded to Union Fidelity. Union Fidelity had claimed costs of $433.26. Costs awarded represented expenses of depositions taken plus travel to the Merendino deposition in Utah.

Awarding of costs to the prevailing party lies within the discretion of the trial court. *Romain v. Pebble Creek Partners,* 310 N.W.2d 118, 123–24 (Minn. 1981). Such costs may include the costs of taking depositions. *Id.*

Costs in this action are based on Minn.Stat. § 549.04 (1982), which makes no distinction between judgments of dismissal and those on the merits. This statute requires only that there be a "prevailing party." The trial court has discretion in determining who is a "prevailing party." *Matter of Gershcow's Will,* 261 N.W.2d 335, 340 (Minn.1977). There may be some ques-

tion as to whether a dismissal makes a defendant a "prevailing party." *See,* Annot., 66 A.L.R.3d 1087, § 9 (1975). The two cases cited on the type of dismissal involved here, however, both hold that costs are allowable. *McKelvey v. Kismet, Inc.,* 430 So.2d 919 (Fla.App.1983), pet. den. 440 So.2d 352; *Hart v. Wolff,* 489 P.2d 114 (Alaska 1971).

Although there are no Minnesota cases, a finding that Union Fidelity, by obtaining dismissal with prejudice, had succeeded in the action, *see, Haugland v. Canton,* 250 Minn. 245, 254, 84 N.W.2d 274, 280 (1957), would be within the trial court's discretion. *Matter of Gershcow's Will.* Finally, no abuse of discretion appears in the amount of costs awarded.

### DECISION

The extent of the delay in bringing the action to trial, and the reasons for the delay, constitute extraordinary circumstances justifying dismissal without a showing of prejudice to the defendant.

Affirmed.