**Channie COPELAND, individually, and Channie and Raymond Copeland as parents and natural guardians of Wanda Copeland, Raymond Copeland, Jr. and Cathy Copeland, Appellants,**

v.

**Gerald Oscar BRAGGE, Respondent.**

No. C8–85–1285.

Court of Appeals of Minnesota.

Nov. 26, 1985.

Gregory A. McClenahan, Richard P. Mahoney, Minneapolis, for appellants.

Ted E. Sullivan, Caryn F. Brenner, Minneapolis, for respondent.

Heard, considered, and decided by HUSPENI, P.J., and FOLEY and FORSBERG, JJ.

## OPINION

HUSPENI, Judge.

Channie and Raymond Copeland appeal from a judgment entered against them pursuant to an order for dismissal with prejudice. The trial court dismissed the action based on respondent Gerald Bragge's motion to dismiss under Minnesota Rules of Civil Procedure 41.02(1) for failure to prosecute. We affirm.

## FACTS

This is a negligence action for personal injuries sustained in a two car accident which occurred on February 8, 1976. Channie Copeland was driving her car in which her three minor children, Wanda, Raymond, Jr. and Cathy, ages 16, 14 and 10, were passengers. Gerald Bragge was driving another vehicle when the two vehicles collided. Raymond Copeland, Jr. left the scene of the accident in an ambulance and he was hospitalized for a week.

A Minneapolis police officer investigated the accident and filed a report with the Department of Public Safety on February 17, 1976. Two eyewitnesses were listed on the report, one of whom still resides at her listed address. Four photographs of the damaged Copeland vehicle were taken. Channie Copeland gave a statement on

February 24, 1976, and one eyewitness gave a statement on August 25, 1977.

The Copelands contacted attorney Charles W. Anderson to represent them. The Copelands commenced a suit against Bragge on September 12, 1979. Through his attorney, Charles R. Coulter, Bragge served an answer and counterclaim on October 8, 1979. He denied liability and sought contribution from Channie Copeland for her children's damages. Channie Copeland subsequently served a reply to Bragge's counterclaim, through another attorney, Richard P. Mahoney. Mahoney was retained by Channie Copeland's insurer to defend and serve a reply to the counterclaim.

Following the service of the initial pleadings in October 1979, there was little communication between the parties and their attorneys until almost five years later, when Bragge brought a motion to dismiss. On October 8, 1979, Anderson, the Copelands' attorney, sent Bragge's lawyer copies of the Copelands' medical files and bills and proposed a settlement meeting. On October 15, 1979, Anderson sent Bragge's interrogatories to the Copelands. Answers to the interrogatories were never served on Bragge. No discovery was conducted and nothing further was done to develop the case in the interim.

Anderson died in early 1980. The Copelands were advised of his death but failed to retain new counsel during the next five years. Channie Copeland claims that she contacted Anderson's office following his death. She claims that she understood that another attorney would be handling the case and that she would be contacted if anything developed.

When Channie Copeland was served with the motion to dismiss, she contacted new attorneys who located the Copelands' file which contained the medical records. These records showed that all the Copelands (except Raymond) received medical treatment in 1976 and 1977 for their injuries. Raymond Copeland, Jr. was last seen in December 1977 for physical therapy. On February 22, 1977, the Copelands (ex-cluding Raymond) were given permanency evaluations for their injuries. They have received no subsequent treatment. They claim that their injuries are permanent and that they continue to suffer from them.

The Copelands have been involved in two other lawsuits since the injuries in this case occurred.

## ISSUE

Did the trial court abuse its discretion in dismissing appellants' suit with prejudice?

## ANALYSIS

The Copelands urge that the trial court's dismissal be reversed on the grounds that their medical files are complete, and all witnesses are available to testify, including the treating physicians. They maintain that the lack of discovery is not critical here since all relevant facts were adequately recorded in the witness statements, medical reports, and police report. The Copelands characterize their five-year period of inactivity as a misunderstanding about who was assigned their case and a "non-contemptible excuse."

This court recently described the dilemma that is present in this case:

Two policies come into conflict when the court faces a motion to dismiss on procedural grounds. On the one hand, "a broad measure of discretion must be left to trial judges to enforce calendar rules, to prevent unnecessary and inexcusable delays, and to promote the public interest in keeping court dockets free of stale claims." On the other hand, "[a]n order of dismissal on procedural grounds runs counter to the primary objective of the law to dispose of cases on the merits."

*Housing & Redevelopment Authority of St. Paul v. Kotlar*, 352 N.W.2d 497, 499 (Minn.Ct.App.1984) (quoting *Firoved v. General Motors Corp.*, 277 Minn. 278, 283–84, 152 N.W.2d 364, 368–69 (1967)).

Trial courts have broad discretion to prevent inexcusable delays and promote the public interest in keeping dockets free of

stale claims, "the trial of which is fraught with unusual difficulties of proof and not infrequently produces unacceptable results to both the losing and prevailing party as well as public dissatisfaction with our system of justice." *Kielsa v. St. John's Lutheran Hospital Association*, 287 Minn. 187, 192–93, 177 N.W.2d 420, 424 (1970).

Even though a dismissal for failure to prosecute is discretionary, the supreme court has established specific guidelines for trial courts to follow. Before a trial court may dismiss an action for failure to prosecute, it must be shown that (1) the delay prejudiced the defendant and (2) the delay was unreasonable and inexcusable. *Bonhiver v. Fugelso, Porter, Simich & Whiteman, Inc.*, 355 N.W.2d 138, 144 (Minn. 1984).

### Prejudice to Defendant

Prejudice is the primary factor to be considered in a dismissal. *Firoved*, 277 Minn. at 283, 152 N.W.2d at 368. A defendant has the burden of showing prejudice of such a character that some substantial right or advantage will be lost or endangered. *Id.* at 283–84, 152 N.W.2d at 368. The prejudice must be more than the ordinary expense and inconvenience of trial preparation. *Id.* at 283, 152 N.W.2d at 368. Further, prejudice should not be presumed from the mere fact of delay. *Id.* at 284, 152 N.W.2d at 368.

In this case, the trial court had to determine whether under the circumstances Bragge was prejudiced in some substantial way by the Copelands' failure to move forward with their action. The trial court determined that the delay substantially prejudiced Bragge because of the nine-year time lapse since the accident and the nature of the case—a personal injury action where liability is disputed.

The trial court cited several specific facts which prejudiced Bragge. It noted that "there has been no discovery conducted in the nine years since the accident except for an unanswered set of Defendant's Interrogatories to the Plaintiffs"; that "the intervening nine years between the accident and any discovery make it highly unlikely that any available witness will be able to recall with certainty and without bias the facts of the accident"; that "Defendant has had no chance to conduct any discovery with regard to Plaintiffs' physicians or to conduct his own independent medical examinations of the Plaintiffs"; that "there is little chance that the Plaintiffs' physicians will have much, if any, recall of the Plaintiffs' case independent of their records"; and that the delay makes it "extremely difficult for the Defendant to evaluate whether the treating physicians provided care and treatment that was reasonable and necessary."

Because liability is disputed here, the accuracy of witness testimony is crucial. Details about road and weather conditions, distances, and speed are among the facts necessary to determine liability. The Copelands' delay has rendered Bragge's ability to adequately defend himself extremely difficult. The trial court justifiably found that the delay has prejudiced Bragge. *See Kielsa* (the trial court was justified in dismissing for failure to prosecute a medical malpractice action arising out of a ten-year-old incident).

### Reason for Delay

The Copelands must show a reasonable excuse for their delay in order to oppose Bragge's motion to dismiss for failure to prosecute. The nature of this claim required the Copelands to exercise some diligence. *See DeMars v. Robinson King Floors, Inc.*, 256 N.W.2d 501, 504 (Minn. 1977) (the trial court has the discretion to dismiss a suit where a plaintiff's failure to exercise reasonable diligence is unexcused and the nature of the suit requires such diligence). The trial court found that the five-year delay and the Copelands' involvement in two other lawsuits since the 1976 accident sufficiently demonstrated that the delay was unreasonable.

Several Minnesota cases focus on the distinction between a delay caused by a plaintiff's own lack of diligence and a delay caused by a plaintiff's attorney. The lack of diligence on the part of a plaintiff's

counsel, despite a plaintiff's efforts to move his or her case along, may be a reasonable excuse for delay. In *Scherer v. Hanson*, 270 N.W.2d 23, 25 (Minn.1978), the Minnesota Supreme Court held that the trial court was presented with a reasonable excuse when the plaintiff's failure to prosecute was due to the neglect of plaintiff's former counsel in handling the case. In *Scherer*, the plaintiff had called monthly to check on the status of his case. Each time he was reassured that the case would be called to trial soon. The plaintiff finally hired another attorney who immediately started discovery. The supreme court was reluctant to penalize the plaintiff for conduct attributable primarily to his lawyer. *Id.* at 25.

The supreme court reversed another order for dismissal where the delay in prosecution was due to the neglect of counsel and the plaintiff showed he acted diligently. *Peters v. Waters Instruments, Inc.*, 312 Minn. 152, 251 N.W.2d 114 (1977). The plaintiff in *Peters* contacted his attorney on several occasions during a six-year period. It was not until the end of that six years that the lawyer informed his client that he would not be able to handle his case.

The plaintiff's attorney was also responsible for the delay in *Firoved*, a personal injury case. In *Firoved*, the plaintiff had contacted a North Dakota lawyer who was not licensed in Minnesota and who had difficulty associating with local counsel. Delays were caused by a series of mishaps including the death of one local attorney and the late withdrawal of another. The trial court dismissed the case when the last local counsel was unprepared due to lack of time. Because the client was not at fault, the supreme court found the trial court's dismissal was "too drastic." *Id.* at 282, 152 N.W.2d at 368.

This court has recently acknowledged the distinction between a client's actions and those of counsel:

> While it is true that delays caused by delinquencies of counsel should not be visited upon the client, the record must reflect the delinquency and show he is not without fault himself in this delay.

*Kotlar*, 352 N.W.2d at 500 (citation omitted). This court affirmed a dismissal in *Kotlar* on the basis that the plaintiff did not act diligently. *Id.*

■ Some reasonable excuse must be shown for the Copelands' five-year delay. None has been advanced in this case. The Copelands were involved in two other lawsuits since the 1976 accident. They had some experience in the conduct of litigation. Despite their experience, they conducted no discovery for nine years following the accident. The trial court was justified in ruling that the five-year delay was unreasonable and inexcusable.

Finally, the Copelands argue that a failure to prosecute may not be established until a case has been called for trial and the plaintiff fails to appear at the calendar call. *See Zuleski v. Pipella*, 309 Minn. 585, 245 N.W.2d 586 (1976); *Breza v. Schmitz*, 305 Minn. 537, 233 N.W.2d 559 (1975), *appeal after remand*, 311 Minn. 236, 248 N.W.2d 921 (1976); *Jeurissen v. Harbeck*, 267 Minn. 559, 127 N.W.2d 437 (1964). In *Zuleski*, *Breza* and *Jeurissen*, however, the plaintiffs had filed a note of issue. None was ever filed by the Copelands here. They have made no efforts whatsoever toward developing their case in five years. They have in no way indicated that they are ready or willing to proceed with the litigation process. The cases they cite in support of their argument that a failure to prosecute may not be established until the case has been called for trial are inapplicable to their case.

## DECISION

Because of the nature of the suit, the nine-year time lapse since the accident and the appellants' failure to provide a reasonable excuse for their five-year delay in contacting their attorney, the trial court did not abuse its discretion in dismissing appellants' case with prejudice for failure to prosecute.

Affirmed.