**Karen Ann RYAN, et al., Appellants,**

v.

**BALLENTINE VFW POST NO. 246, et al., Eldon David Erstad, Respondents.**

No. C4-87-56.

Court of Appeals of Minnesota.

June 2, 1987.

Gerald C. Magee, Minneapolis, for Karen Ann Ryan, et al.

Janet Waller, Soshnik, Waller & Atchison, Minneapolis, for Ballentine VFW Post No. 246, et al.

Gerald H. Hanratty, Minneapolis, for Eldon David Erstad.

Heard, considered and decided by NIERENGARTEN, P.J., and PARKER and FOLEY, JJ.

## OPINION

FOLEY, Judge.

The incident giving rise to this appeal occurred when appellants Karen Ryan, Carol Ryan and Colleen McInnis (Voeks) were allegedly beaten and injured by respondent Eldon David Erstad. On December 17, 1976, appellants individually commenced actions against Erstad and respondents Ballentine VFW Post No. 246 and its Commander, Daniel Drinkwine, alleging that Erstad was intoxicated at the time of the attack and that the Ballentine VFW directly contributed to the accident by serving Erstad while he was obviously intoxicated.

Appellants filed a note of issue/certificate of readiness on June 30, 1986. Respondents' motion to dismiss the action for failure to prosecute was granted and judgment was subsequently entered. Appeal is taken from this judgment. We affirm.

## FACTS

In their complaints, appellants alleged the following facts. On or about December 21–22, 1974, Erstad was a patron at Ballentine VFW. Ballentine VFW continued to serve Erstad alcoholic beverages despite his obvious intoxication. As a direct result of his intoxication, Erstad beat and injured appellants, resulting in their need for medical attention.

Answers were interposed on behalf of respondents in January 1977. An initial request for answers to interrogatories was served upon appellants' counsel in February 1977 and renewed again in June 1977. On September 6, 1977, the depositions of Voeks and Karen Ryan were taken. Carol Ryan's deposition was taken on January 23, 1978.

From January to April 1978, respondents made four requests for answers to interrogatories. On June 5, 1978, respondents served appellants' counsel with a motion to compel discovery. In June 1978, two answers to interrogatories were returned unsigned. A third answer to interrogatories was returned unanswered. In September 1978, respondents received Karen Ryan's medical report and served supplemental interrogatories on appellants' counsel.

In April 1979, appellants' counsel informed respondents that his continued representation in the matter was uncertain. Respondents' offer to begin settlement negotiations went unanswered and communication ceased until appellants filed a note of issue/certificate of readiness on June 30, 1986. Respondents moved to consolidate the actions and to dismiss for failure to prosecute pursuant to Minn.R.Civ.P. 41.02.

In granting the motions, the trial court noted in its memorandum that over 11 years had passed between the dates of the alleged injuries and filing of appellants' note of issue. Further, more than nine years had passed since appellants took any affirmative action in pursuing the case. Recognizing that rule 41.02 was infrequently used, the trial court found dismissal appropriate because appellants had offered no excuse or justification for the delay and because respondents would be substantially prejudiced by proceeding to trial.

## ISSUE

Did the trial court abuse its discretion in granting respondents' motion to dismiss for failure to prosecute after appellants filed a note of issue/certificate of readiness?

## ANALYSIS

Minnesota R.Civ.P. 41.02(1) provides:

(1) The court may on its own motion, or upon motion of a party, and upon such notice as it may prescribe, dismiss an action or claim for failure to prosecute or to comply with these rules or any order of the court.

*Id.* A motion to dismiss on procedural grounds implicates two conflicting policies: (1) the " 'primary objective of the law to dispose of cases on the merits,' " and (2) a trial court's discretion " 'to enforce calendar rules, to prevent unnecessary and inexcusable delays, and to promote the public interest in keeping dockets free of stale claims.' " *Housing & Redevelopment Authority v. Kotlar,* 352 N.W.2d 497, 499 (Minn.Ct.App.1984) (quoting *Firoved v. General Motors Corp.,* 277 Minn. 278, 283–84, 152 N.W.2d 364, 368–69 (1967)).

Generally, use of involuntary dismissal under rule 41.02(1) is infrequent and vested in the sound discretion of the trial court. *Scherer v. Hanson,* 270 N.W.2d 23, 24 (Minn.1978). Although discretionary, the supreme court has established specific guidelines for trial courts to follow, providing that dismissal for failure to prosecute is appropriate only when two conditions are demonstrated: (1) the delay prejudiced the defendants; and (2) the delay was unreasonable and inexcusable. *Id.* at 24. Here, the trial court found:

The defendants claim that the plaintiffs' delay in this case has been unreasonable and inexcusable and has caused them to be substantially prejudiced in the preparation of their defense. There has been no action on any of these matters for over nine years. These lawsuits arise out of an incident which occurred in 1974. *It is extremely unlikely that any witnesses which can be found would be able to recall with clarity any of the circumstances surrounding the alleged incident. At least three of the plaintiffs' own witnesses cannot be located due to change of address. Moreover, the plaintiff has offered neither excuse nor justification for this lengthy delay.*

The plaintiffs did file Notes of Issues/Certificates of Readiness on these cases just prior to the July 1, 1986 cutoff date. However, this action does nothing to alleviate the prejudice suffered by the defendants after more than nine years of inaction. Accordingly, the defendants' motion to dismiss is granted.

(Emphasis supplied.)

Appellants argue that dismissal for failure to prosecute is erroneous in this case because the case was never called for trial. They differentiate this case from our decision in *Copeland v. Bragge,* 378 N.W.2d 35 (Minn.Ct.App.1985), where the plaintiffs had failed to file a note of issue/certificate of readiness. In particular, they cite language in *Copeland* distinguishing *Zuleski v. Pipella,* 309 Minn. 585, 245 N.W.2d 586 (1976), *Breza v. Schmitz,* 305 Minn. 537, 233 N.W.2d 559 (1975), *appeal after remand,* 311 Minn. 236, 248 N.W.2d 921 (1976), and *Jeurissen v. Harbeck,* 267 Minn. 559, 127 N.W.2d 437 (1964), as cases in which failure to prosecute could not be established until the case was called for trial and the plaintiff failed to appear:

> In *Zuleski, Breza* and *Jeurissen* * * * the plaintiffs had filed a note of issue. *None was ever filed by the Copelands here.* They have made no efforts whatsoever toward developing their case in five years. They have in no way indicated that they are reading or willing to proceed with the litigation process. The cases they cite in support of their argument that a failure to prosecute may not be established until the case has been called for trial are inapplicable to their case.

*Copeland,* 378 N.W.2d at 39 (emphasis supplied).

The salient question here is whether appellants' filing of a note of issue/certificate of readiness in and of itself prevents dismissal for failure to prosecute, when the case has not yet been called for trial, even though it is undisputed that over 11 years had elapsed since the alleged offense and more than nine years since appellants acted affirmatively to pursue the case. As the foregoing analysis demonstrates, our answer to this question is no.

In *Jeurissen,* an action to establish a prescriptive easement was commenced in May 1961. It was placed on the district court calendar but never called for trial. The supreme court reversed the order dismissing the action for failure to prosecute or bring the action to trial. As respondents note, *Jeurissen* is factually distinguishable because the defendants in that case did not allege prejudice caused by the delay.

In *Breza,* the personal injury action was commenced in September 1971 and a note of issue filed in July 1972. Problems developed in the discovery process; appellant had difficulty retaining counsel and failed to appear at a scheduled hearing. The trial court granted the respondent's motion to dismiss for failure to prosecute after the motion had been continued a number of times.

The supreme court reversed, declining to adopt an exception to the general rule under *Jeurissen* that a case may not be dismissed for want of prosecution until it is called for trial. Significantly, underlying the *Breza* opinion was the court's concern as to whether the plaintiff had received adequate notice of a change in hearing dates as a consequence of ongoing problems with the case. Adequacy of notice

has never been an issue in the present case.[1]

In *Zuleski,* the action was commenced in February 1972. In August 1972, plaintiffs filed a note of issue. In February 1973, they were notified that if the case was not certified ready for trial within 10 days, it would be stricken from the general calendar. No certificate of readiness was filed and the case was stricken. In July 1975, following defendant's refusal to stipulate to reinstatement, plaintiffs moved the court to reinstate the matter. The trial court denied the motion and plaintiffs appealed.

The supreme court affirmed. Noting that the record must be viewed in the light most favorable to the trial court's order, the court recognized that the "decision to dismiss *necessarily depends upon the circumstances peculiar to each case,* justice and equity to each party." *Zuleski,* 309 Minn. at 586, 245 N.W.2d at 587 (emphasis supplied). The circumstances in this case support the trial court's decision to dismiss for failure to prosecute.

*Prejudice to Defendants*

In an uncontested affidavit before the trial court, respondents' attorney states that only one of eight witnesses employed by Ballentine VFW on the night of the alleged incident continues to be so employed. That employee did not serve Erstad and would not provide direct testimony as to his conduct that night. Further, a Ballentine VFW patron that evening and potential witness has since died. A second patron no longer belongs to the VFW post.

We have upheld a trial court's dismissal based on its finding that "it is unlikely that even if [witnesses] could be located they would be able to recall with any clarity events which occurred more than ten years ago." *Dvoracek v. Lovely,* 366 N.W.2d 391, 393 (Minn.Ct.App.1985).

In *Belton v. City of Minneapolis,* 393 N.W.2d 244 (Minn.Ct.App.1986), *pet. for rev. denied,* (Minn. Nov. 19, 1986), this court upheld a dismissal for failure to prosecute, despite the absence of a separate showing of substantial prejudice to the re-

spondent based on "compelling evidence that appellant's delay was unreasonable and inexcusable." *Id.* at 246. Specifically in this case, in the six years between commencement of the wrongful discharge action in state court until respondent's motion to dismiss, appellant's "only movement on the case," despite extensive discovery development in federal court, was service of interrogatories, motion to amend the complaint and motion for a pretrial conference. Prejudice was sufficiently demonstrated by the failure to offer a reasonable excuse for unnecessary delay, particularly since witnesses would have to testify to events occurring 10 years previously.

In *Reichert v. Union Fidelity Life Insurance Co.,* 360 N.W.2d 664 (Minn.Ct. App.1985), this court held that a delay of six and one-half years in bringing an action to trial, including three years attributable to appellant's failure to obtain a deposition or to proceed without it, constituted extraordinary circumstances that justified dismissal of the action without a showing of prejudice by the respondent. *Id.* at 668.

If a six and one-half year delay in *Reichert* constituted "extraordinary circumstances" justifying dismissal *without* a showing of prejudice, we would indeed be hard pressed to reverse the dismissal here when the delay was nine years in length and the respondents amply met their burden of "showing prejudice of such a character that some substantial right or advantage will be lost or endangered." *Firoved,* 277 Minn. at 283–84, 152 N.W.2d at 368.

*Unreasonable Delay*

Appellants assert that their nine-year delay in actively pursuing the case is due to their inexperience with the legal system, the latent nature of their injuries and the failure of one of them to inform her attorney of her out-of-state address. Noticeably absent from the record before the trial court is any specific documentation to support appellants' claims that their injuries were latent in nature and that this factor

---

1. On appeal after remand in *Breza,* the supreme court affirmed an order dismissing the case for failure to obey discovery orders pursuant to

Minn.R.Civ.P. 37.02(2)(c). *See Breza v. Schmitz,* 311 Minn. 236, 237, 248 N.W.2d 921, 922 (1976).

was responsible for the nine-year delay. "New evidence, not in the record below, * * * will not be considered for the first time on appeal." *Dvoracek*, 366 N.W.2d at 394.

We make particular note that the lack of diligence in pursuing this case was *not* caused by neglect of counsel. Here, appellants' own lack of diligence caused the nine-year delay. Under such circumstances, involuntary dismissal for failure to prosecute was appropriate. *See Dvoracek*, 366 N.W.2d at 394.

### DECISION

Affirmed.