J. H. CARR and RALPH CARR, Appellees, v. GLENNA K. OTT et al., Appellants.—277 S. W. (2d) 419.

Eastern Section.   January 6, 1954.

Petition for Certiorari denied by Supreme Court, May 21, 1954.

J. W. Stone and J. Frank Qualls, both of Harriman, for appellants.

Geo. W. Dagley and Harry J. Joyce, both of Wartburg, and Ross H. Williams, Sr., of Knoxville, for appellees.

HALE, J.   This record presents the following very interesting legal question: Where a deed is prepared for execution by ten persons, who as co-owners hold full title to the land described, but is not signed by one of them and is disaffirmed by two who signed during their minority, does it bind the remaining tenants who did sign so as to allow a decree for specific performance against them? The Chancellor so held and the adverse defendants have appealed.

Tiffin Ott died intestate the owner of the lands in controversy, consisting of about 900 acres of mountain land in Morgan County. He had been married twice, having children by both marriages. By his first wife he had six children and by the last marriage to defendant Glenna K. Ott who survived him he had three children. In litigation subsequently had the widow was awarded a one-third interest in this land, so that at the time of the transaction presently mentioned this land was owned by the defendants in the following interests: Glenna K. Ott, $\frac{9}{27}$ths, Blanche Ott Scott, Madge Ott Schubert, Mary Emily Ott Couturier, Zella Ott Shannon, Ruby Ott Kennedy (children of the first marriage) each a $\frac{2}{27}$ths, and Ross H. Williams, Jr. and Kathleen Williams Schacter (children of Mrs. Ross H. Williams, Sr., a deceased daughter by the first marriage) each a $\frac{1}{27}$th, and Charles Allen Ott, Jane Ott Human and Janelle Ott (children by the last marriage) each $\frac{2}{27}$ths.

For several years this land had been in litigation between the first set of heirs, on the one hand, and the widow

and her children on the other hand. Taxes were piling up and court costs were accruing.

In the Fall of 1948, Ross H. Williams, Sr., a lawyer of Knoxville, who was representing his children, as well as the children by the first marriage, in such litigation, had a conference with Mrs. Glenna K. Ott, widow, representing herself and children, two of whom, viz., Jane and Janelle, were minors, aged 19 and 17 years, respectively. Mr. Williams and Mrs. Ott decided it would be best for all parties to sell this land by private sale rather than in the court proceedings then pending. An offer was made to purchase it by the complainants, Dr. J. H. Carr and his son, Ralph L. Carr, for $3,000, and this was accepted by Mr. Williams and Mrs. Ott, with the understanding that if any of the heirs wanted to purchase at this price they would have the right to do so. None of them wanted to buy, so on October 23, 1948, Dr. Carr paid to Mrs. Ott the sum of $100, receipted for by her ''as down payment on the Tiffin Ott property in the 3rd district that he purchased from W. W. Scarbrough and the balance of $2,900.-00 to be paid when deed is delivered.'' This was signed by her individually.

Mrs. Mae R. Stricklin, an attorney of Wartburg, was instructed to prepare the deed. She was interested in the sale of this land in that she and Judge J. W. Stone had represented Mrs. Ott in litigation over this land and had been awarded a fee of $350 which had been taxed thereagainst.

So on November 8, 1948, Mrs. Stricklin prepared a deed in which the ''Heirs of Tiffin Ott, deceased, as follows; Glenna K. Ott, widow, Ross H. Williams, Jr., and Kathleen Williams Schacter, being heirs of Elsie Ott Williams, deceased; Blanche Ott Scott, Madge Ott Schubert, Mary Emily Ott Couturier; Zella Ott Shannon; Ruby Ott

Kennedy; Charles Allen Ott; Jane Ott; and Janelle Ott, being all of the heirs'', were to convey this land to the Carrs ''in consideration of the sum of One Hundred Dollars, cash in hand paid and the other consideration to be paid on delivery of this deed, cash in hand paid''. The covenanting clause is that the grantors ''are lawfully seized of fee-simple of the premises above conveyed''; that it is free of incumbrances and that they would forever warrant and defend the title thereto.

At the time this deed was prepared, it was contemplated that the minors would execute it and that proceedings be had to relieve them of the disabilities of minority (the younger would have reached 18 the following January) and then have them ratify such conveyance.

This deed was signed by all of the grantors named therein with the exception of Blanche Ott Scott. It was acknowledged by all who signed with the exception of Mrs. Schacter who expected to later acknowledge it before Mrs. Stricklin, a notary public, at some time when Mrs. Schacter was in Wartburg.

As noted above, Mrs. Blanche Ott Scott refused to sign. Later after this suit was instituted, the minors mentioned filed answers disaffirming their acts in signing such deed.

At the time the agreement was reached by Ross H. Williams and Mrs. Glenna K. Ott with Dr. Carr, Mr. Williams was the attorney of record for his children and for the first set of the Ott heirs. Mrs. Ott was the natural guardian of her minor children. Of course, Mr. Williams was interested in the welfare of his children and that of the full sisters of his deceased wife. Mrs. Ott had a personal interest and was also interested in the welfare of her children. They had no right to convey this land; all they could do was advisory. This limitation on their power is shown by the fact that a deed was prepared for

the execution of the parties in interest, who, therefore, would not be bound unless they joined in the deed. If they did so join, then that would show their approval of the transaction.

By the Spring or Summer of 1949 all of the parties except Mrs. Scott had signed this deed. At one time while it was in the possession of Mrs. Stricklin she had turned it over to Dr. Carr and he then took it to Mrs. Scott in an effort to have her execute it. She continued her refusal. It was then returned to Mrs. Stricklin, who was about to enter a hospital. She turned it over to Mr. Ross H. Williams, Sr., who either destroyed or spoliated it.

This suit was instituted by the complainants Carr on June 24, 1950, and seems to have been precipitated by some action taken in the old case to bring the land to sale. The defendants were those named as grantors in the deed, as before set forth.

The bill proceeds upon the theory that a letter dated October 13, 1948, written by Mr. Ross H. Williams, Sr. to Dr. Carr, and a letter of the same date from Mrs. Ott to Dr. Carr, both of which in substance solicit his purchase of this land at $3,000, coupled with the quoted receipt executed by Mrs. Ott together with the fact that Mr. Williams was the ''attorney or representative'' of the first set of heirs, and Mrs. Ott was ''agent of herself and children'' constituted an offer and acceptance binding upon all the parties in interest. It is further averred:

> ''For some reason, however, the defendants, or some of them, have refused to complete said deed and deliver the same to your complainants notwithstanding the fact that complainants have urged them at different times and occasions to get said deed completed and deliver the same.''

This was sworn to by Dr. Carr and with it there was tendered the remainder of the purchase money, $2,900. There is a special prayer for specific performance.

A demurrer was filed questioning the sufficiency of the bill. This was on August 18, 1950. On January 29, 1951, the complainants were allowed to amend their original bill by charging that this deed was executed by all parties except Mrs. Scott and was delivered to Mrs. Stricklin as the agent of complainants; that therefore this constituted an executed conveyance as to those who did sign and complied with the Statute of Frauds; and the prayer was amended so as to ask, in the alternative, for a decree of specific performance against the ones who did sign. The demurrer was overruled. An answer was filed by all defendants, denying allegations of agency and that the deed was binding upon the persons who signed. Mrs. Ott tendered into court the $100 so received by her, plus interest at 6%.

The Chancellor, as before indicated granted a decree against all defendants except the non-signer, Mrs. Scott, and the minors, Jane Ott Human and Janelle Ott. The assignments of error of the appellants present the question posed at the opening of this opinion. Preliminary to the discussion of this legal question it may be well to mention that the property in question adjoins a State game sanctuary and it is said that it may be enlarged which has caused the enhancement of property in that area to $6 or $7 per acre.

Counsel for appellants say the only authority they can find involving this legal question is the Iowa case of Haviland v. Haviland, 130 Iowa 611, 105 N. W. 354, 5 L.R.A., N.S., 281. In that case the evidence showed the deed was not to be binding unless executed by all parties in interest. We have found the case of Axe v. Potts, 349

Pa. 345, 37 A. (2d) 572, 574, 154 A.L.R. 764, in which it is said:

"In the present case, the agreement designated three persons as the owners, and when executed by only two of them, was patently incomplete. The agreement was not joint and several, but joint only, and we cannot substitute for the terms therein set forth the terms of a new and different contract."

In the A.L.R. annotation to that case, at page 778, it is said:

"One cannot with correctness, say, abstractly, that a contract signed by less than all of the intended, or desired, vendors is binding on the signers, or that it is not so binding; the whole problem is one of the intention of the parties as disclosed in the particular negotiations and in the instrument presented for signature."

Neither in the negotiations between Mr. Williams and Mrs. Ott, on the one part, and Dr. Carr, on the other part, nor in the deed presented for signatures is there any mention of the specific interests owned by the grantors who were not conveying certain interests as individuals, but were conveying the entire fee as *"the heirs of Tiffin Ott, deceased"*. Or, as remarked in the above quotation from the Pennsylvania Supreme Court, the undertaking was "not joint and several but joint only." And we think that such was the construction given by the grantee Dr. Carr, who sought to have it executed by Mrs. Scott, and who until the amendment of the bill was made in January, 1951, (over two years after the deed was prepared) took the position it was a joint instrument enforceable against all the heirs through the agency of Mr. Williams and Mrs. Ott, as hereinbefore set forth. The amendment seems to us to have been an afterthought in

an attempt to salvage something from the wreck of this abortive plan.

We attach no importance to the testimony of certain of the defendants who said they understood the deed was not to be binding unless signed by all. It is true that Mr. Williams, Sr., testified he told complainant Ralph L. Carr that unless all the heirs signed it would not be a sale. Mr. Carr denies this statement as having been made to him. So this would seem to leave this issue in balance.

In the annotation to A.L.R. before mentioned, at page 779, is mentioned the case of Rose v. Henderson, 63 Fla. 564, 603, 59 So. 138, which involved this same question, and in it reference is made to the English case of Lumley v. Ravenscroft, L.R. 1 Q.B. Div. [1895] 683, text 684, wherein it is said:

"This is an appeal from an order made by Day, J., granting an injunction against one of the defendants in the action, Alice Ravenscroft, restraining her from granting a lease of certain property in St. James Street to any other person than the plaintiff until after the trial of the action. The case is a singular one. There is what on the face of it appears to be a valid binding agreement for the lease of these premises to the plaintiff, signed by the plaintiff and by Moore, as agent for the defendants. The contract is contained in two letters of October 5, 1894. If Moore's principals were both of age, there would be a complete contract and no difficulty in the case. But unfortunately one of the principals is an infant 19 years of age, and the agreement is unquestionably an agreement for a lease by the two. It is an agreement by the two with the plaintiff for a lease to him of certain property, of which, as it appears, a lease was being granted to the two. What is the law?

Specific performance is out of the question. You cannot get specific performance against an infant; and, upon the evidence before us, no case is made out for specific performance against the other defendant either. This case is not within the exception as to misrepresentation or misconduct stated in Price Vs. Griffith (1) and Thomas Vs. Dering (2) *but comes within the general rule that, where a person is jointly interested in an estate with another person and purports to deal with the entirety, specific performance will not be granted against him as to his share.*" (Italics supplied.)

Then in that case (Rose v. Henderson) it is said [63 Fla. 564, 59 So. 149]:

"The contract was for the sale of the entire interest of the three Henderson heirs, and we do not think a court of equity has any authority to enforce a contract different from the one the parties themselves made, in the absence of fraud, misrepresentation, or concealment."

In the Michigan case of Stout v. Porritt, 250 Mich. 13, 229 N.W. 409, 411, the court said:

"The contract here expresses what the parties intended—an engagement by the four owners to convey the whole title. As it was unseverable, and as Bert Porritt never executed it, the case is governed by the principle stated in Griefen v. Hubbard, 112 Ill. App. 16, quoted with approval in Rothstein v. Weeks, 224 Mich. [548] 553, 195 N.W. 49, 51. ' "Covenants founded on mutuality of obligation and liability must be mutually binding upon the parties to them. If, therefore, one of several parties to a deed inter partes founded on mutual covenants neg-

lects to execute the deed, the contract is not binding on the others who have executed it." ' "

In Williams v. Bush, 197 Miss. 793, 20 So. (2d) 706, it was held that where a mother executed a contract to convey her interest in land inherited by her and her minor son and to obtain the approval of the chancery court of the sale of the minor's interest, specific performance could not be enforced even as against her interest.

In Morris v. Wilson, 187 Md. 217, 49 A. (2d) 458, 462, it is said:

"In America it is generally (though not universally) held that a contract with a tenant in common cannot be specifically enforced against one or more when the contract is in the name of all, but only some sign."

In the Iowa Supreme Court case of Jasperson v. Bohnert, 243 Iowa 1275, 55 N.W. (2d) 177, the rule announced in Axe v. Potts, supra, and Stout v. Porritt, supra, and also in Madia v. Collins, 408 Ill. 358, 97 N.E. (2d) 313, was approved and enforced.

The rule in Texas is to the contrary, seemingly based upon the idea that unless the conveyance or contract states that it is not to be binding unless all the owners sign it will be binding upon those who do sign. Ward v. Walker, Tex. Civ. App., 159 S. W. 320; Hays v. Marble, Tex. Civ. App., 213 S. W. (2d) 329; Dittoe v. Jones, Tex. Civ. App., 220 S. W. (2d) 315.

■ In the case at bar, there was no fraud, suppression, or concealment; all of the parties knew the owners were those named in the deed as grantors. The parties contracted for the whole, not separate interests. Consequently, we think the majority rule is the sounder.

■ Another reason for this conclusion is to be found in the fact that in Tennessee we adhere to the principle of

mutuality of remedy in cases involving specific performance. In Schultz v. Anderson, 177 Tenn. 533, at page 536, 151 S. W. (2d) 1068, at page 1070, it was said: "Accordingly specific performance will not be granted in favor of one party unless it can also be granted in favor of the other."

This rule is mentioned in Jasperson v. Bohnert, supra, and is the subject of a lengthy annotation to 22 A. L. R. (2d) 510, et seq., containing criticisms and exceptions to it.

With the principle announced in Schultz v. Anderson in mind, let us turn the case around and look at it from that angle: The complainants were seeking to buy the whole tract, i. e., all of the interests of all of the heirs— could they have been required to accept undivided interests? We do not think so.

It results that we are in disagreement with the learned and able Chancellor. The decree below is reversed and bill dismissed at the cost of appellees.

Reversed and dismissed.

McAmis., P. J., and Will Allen Wilkersop, Special Judge, concur.