SECURITY LAND COMPANY, INC.,
Plaintiff-Appellant,

v.

Plato TOULIATOS, Sarah Coley Toulia-
tos, Francis Gassner, Herschel Crowley,
Jr., Trustee; Edward G. Humphreys,
Trustee; Mid-South Title Company,
Inc., Trustee; Augusta Hooper, Kent
Brough, Allen Kent McLean and Her-
man E. Jaehne, Defendants-Appellees.

Supreme Court of Tennessee,
at Jackson.

July 28, 1986.

William H. Fisher, III, Memphis, for plaintiff-appellant.

John C. Vergos, Memphis, for Plato and Sarah Touliatos, defendants-appellees.

Jef Feibelman, Memphis, for Kay Gassner, defendants-appellees.

MATHERNE, Special Justice.

The plaintiff sues for the specific performance of a contract to sell realty, or for damages due to the breach of the contract to sell.

### I. *Statement of the Case and Issues Raised.*

In 1970, Plato Touliatos, Francis Gassner and Herman E. Jaehne purchased 377 acres of land. These parties and their respective wives executed deeds of trust conveying the land to secure purchase money notes. Later, Jaehne conveyed his interest in the land to Touliatos.

Prior to this lawsuit being brought, Gassner and his wife divorced, and the decree awarded the wife Delores a one-ninth (⅑) interest in the land. Thereafter, and after this suit was brought, Gassner died, and by his will devised one-half (½) of his interest in the land to his widow Kay Gassner and one-half (½) to his two daughters Amy and Gretchen Gassner. The lawsuit was revived in the names of these devisees, and at the time of the trial the property was owned as follows: Plato Touliatos, two-thirds (⅔); Delores Gassner, one-ninth (⅑);

Kay Gassner, one-ninth (⅑); Amy and Gretchen Gassner, one-ninth (⅑).

The parties treated the land as an investment with the hope that it could be sold for a profit at a later date. As result Touliatos, with the consent of his co-tenants, listed the property for sale with a real estate agency. The realtor, Hudson, contacted the plaintiff and as result a contract of sale of the land to the plaintiff, signed only by Touliatos as owner and seller, was executed on October 9, 1972, with a closing date set for January 17, 1973. Touliatos' co-tenants, Francis and Delores Gassner, promptly disavowed any intention to sell their interest at the contract price of about $1,350 per acre. As result, the sale to the plaintiff was never closed.

This complaint was filed on May 27, 1975, wherein the plaintiff sought specific performance of the contract to sell the entire tract at the price stated; or (1) specific performance by Touliatos to sell his two-thirds interest, plus a sale of the whole for partition among the parties, plus damages against Touliatos for failure to "cause to be conveyed" the one-third interest of the Gassners, or (2) if specific performance be denied in whole and in part, for damages against Touliatos for breach of the contract of sale.

On October 28, 1975, the plaintiff amended its Complaint to allege that at the time the contract of sale was executed the property "was owned by the defendants Plato Touliatos, Francis Gassner and Delores Gassner as partners or joint venturers, and that in the execution of the contract the defendant Plato Touliatos was acting on behalf of the partnership or joint venture pursuant to authority from the other partners or joint venturers." The plaintiff sought specific performance as to the entire 377–acre tract based upon these allegations.

The lawsuit was not brought to trial until May 4, 1981, more than eight years after the date the contract was to have been closed. The chancellor dismissed the lawsuit as to the Gassner defendants; denied specific performance as against Touliatos; held Touliatos liable for damages for breach of contract to sell his two-thirds interest; found the property worth $1,550 per acre at the time the contract was breached, and worth $1,350 on the date of the contract, and gave damages at the rate of $200 per acre for Touliatos' two-thirds interest in the land.

On motion for new trial, the chancellor revoked his finding of damages and referred the case to the master to ascertain the damages. The master found the property worth $1,350 per acre on the date of the contract and worth the same figure on the date of closing, thus finding no damages. The master's report was affirmed by the chancellor.

On appeal by the plaintiff to the court of appeals, that court affirmed the dismissal of the Gassners; held that specific performance would be enforced as to the two-thirds interest of Touliatos, but remanded for the trial court to adjust the purchase price of that interest in the land "to reflect the delay in the performance of the contract." The court of appeals stated that the "adjustment in price is not to include any change in property values beyond whatever changes have been affected by inflation."

The plaintiff appeals to this court under the following issues for review:

1. Where Specific Performance is said to be available as a matter of right, can a Court properly require inflationary adjustments in the purchase price, and thereby *deny* specific performance?

2. If the Court can deny the plaintiff specific performance, can it properly deny damages too?

3. Was the plaintiff properly denied damages against Touliatos for his failure to cause the other owners to convey, as required by the contract?

4. Was the suit properly dismissed as to the Gassners?

The appellee Touliatos states the issues for review to be:

1. Has the requirement of Rule 11 of the Tennessee Rules of Appellate Procedure, Section A, which gives grounds for appeal been met?

2. Should Security's delay in prosecuting this case to trial, along with Security's subsequent loss of financial ability, as well as losing its charter enable it to profit by getting partial specific performance and/or damages?

3. Should the request for damages even be heard, much less the awarding of damages?

4. Did the courts wrongly dismiss the claim of the Gassners?

The appellee Kay Gassner argues that the Gassner defendants were properly dismissed from this lawsuit.

After a review of the record, we conclude that the dispositive issues are: (1) the position of the Gassner defendants; (2) whether specific performance should be ordered in whole or in part; and (3) the issue of damages, if any.

## II. *The Position of the Gassner Defendants.*

At the time the contract of sale was signed by Touliatos, Francis Gassner owned a ⅔ interest in the land and his former wife Delores Gassner owned a ⅑ interest therein. The Gassners had in the past joined in with Touliatos in the purchase of other lands, and on at least one other occasion Touliatos alone had signed a contract to sell such jointly owned land which contract the Gassner couple honored, and the sale was consummated. On that occasion, however, the proof established that the Gassners knew of the contract of sale and had authorized its execution. The case at bar presents a different factual situation.

On January 18, 1972, Touliatos signed a listing contract with realtor Hudson whereby the land was offered at $1,125 per acre, that figure, however, was scratched out and the figure $1,300 per acre was handwritten in. Later, another listing contract dated July 8, 1972, was signed by Touliatos to Hudson pricing the land at $1,500 per acre. It was under this listing contract that Hudson made the sale to the plaintiff for $1,350 per acre, and which resulted in the contract of sale in question.

The Gassners knew of the two listing contracts and approved them. Francis Gassner testified that he knew nothing of the contract to sell for $1,350 per acre signed only by Touliatos. At this time the Gassner divorce had been effected, and Delores Gassner testified that she had no knowledge of the sale contract signed by Touliatos. At this time she was handling her own ⅑ interest and not necessarily going along with the other owners.

Touliatos testified that he thought he had the authority to bind the Gassners under the contract to sell. However, he could not nail down a specific authorization, but relied on the fact that they signed the listing contract, and he thought he had a telephone conversation with them. On the other hand Francis Gassner immediately disavowed the contract, and his lawyer, after consulting with Delores Gassner's lawyer, wrote all parties that the Gassners were not bound by the contract. The preponderance of the evidence is that the Gassners did not authorize the contract of sale signed by Touliatos.

The plaintiff amended its Complaint to allege that the Gassners and Touliatos were partners or joint venturers in the purchase of this land. They, therefore, argue that the acts of Touliatos were the acts of all and that the Gassners are, therefore, bound to honor the contract of sale signed only by Touliatos.

There is no proof of a partnership, and the plaintiff does not push that theory. The plaintiff does, however, insist that the Gassners are bound as joint venturers. The chancellor and the court of appeals rejected this theory and held the plaintiff and the Gassners were tenants in common. We agree.

The evidence preponderates in favor of the view that these parties bought the land as tenants in common with the hope that it

could be sold for a profit. The evidence also preponderates in favor of a holding that the Gassners never authorized Touliatos to sell the land, and there was no agency or express authority to sell placed in Touliatos. The plaintiff argues that the past conduct of the parties in the sale of other land placed obstensible authority in Touliatos to sign for all. This argument fails in that the plaintiff did not know that the Gassners held an interest in the land, and it had never before dealt with Touliatos so as to be justified in assuming he had the authority to bind all parties. Any contract signed only by Touliatos would, at the most, extend to only his ⅔ interest in the land. We affirm the chancellor and the court of appeals in the dismissal of the Gassner defendants.

### III. *The Specific Performance Issue.*

In that the Gassners are dismissed, there is no contract to be specifically performed as to their interests in the land. The plaintiff sought the entire tract, but as the facts developed the contract could, at best, cover only ⅔ interest owned by Touliatos. With this in mind, we look to the presence or absence of mutuality of remedy in the plaintiff's claim for specific performance as to a ⅔ interest.

▮ It is a fundamental principle in the law of specific performance that for relief to be granted, mutuality of remedy must exist. Accordingly, specific performance will not be granted in favor of one party unless it can also be granted in favor of the other. *Leathers v. Deloach*, (Tenn.1918) 140 Tenn. 259, 204 S.W. 633; *Schultz v. Anderson*, (1941) 177 Tenn. 533, 151 S.W.2d 1068; *Carr v. Ott*, (1954) 38 Tenn. App. 585, 277 S.W.2d 419.

In *Carr v. Ott, supra*, a deed was prepared for execution by ten persons who held title to the land as co-owners, but when the deed was not signed by one such co-owner and was later disaffirmed by two who signed during their minority, the remaining co-owners who did sign the deed were not bound so as to allow a decree for specific performance to be entered against them for the conveyance of their undivided shares of the realty involved. With the rule of mutuality in mind, the *Carr* court stated:

... let us turn the case around and look at it from that angle: the complainants were seeking to buy the whole tract, i.e., all of the interests of all of the heirs— could they have been required to accept undivided interests? We do not think so.

▮ In the case at bar the plaintiff was seeking to buy the entire 377–acre tract; it could not have been forced to accept a ⅔ undivided interest, consequently, no mutuality of remedy.

In *Leathers v. Deloach, supra*, it was held that mutuality of remedy is jurisdictional; and if it does not exist, a court of equity cannot entertain the bill.

In the case at bar there is no mutuality of remedy, and the relief of specific performance as to Touliatos' ⅔ interest cannot be granted to the plaintiff.

### IV. *The Issue of Damages.*

The measure of damages, if any are to be awarded, is the value of the land at the time set for closing less the contract price. See *Bubis v. Blackman*, (1968) 58 Tenn. App. 619, 435 S.W.2d 492. The master found that the value of the land at the stated time of closing was the same as its value at the time of the contract, therefore, no damages were to be awarded. The chancellor affirmed this finding of the master and entered an Order denying the plaintiff any damages.

As noted, the court of appeals reversed that holding and remanded to the chancery court, with instructions, to ascertain damages. This situation is governed by Tennessee Code Annotated, Section 27–1–113, wherein it is stated:

Where there has been a concurrent finding of the master and the chancellor, which under the principles now obtaining is binding on the appellate courts, the Court of Appeals shall not have the right to disturb such finding.

▮ As set out in *Hopkins v. First Tennessee Bank*, (Tenn.App.1977) 560 S.W.2d

916, if an issue is submitted to the master and the master's findings are concurred in by the chancellor, the appellate courts have no right to disturb those findings unless the issue was a matter which should not have been submitted to the master, or there is no evidence to sustain the master's findings.

In the instant case the chancellor clearly had the authority to submit to the master the issue of the amount of damages, if any. We also hold that there was sufficient material evidence before the master to sustain his finding of no damages. The court of appeals erred in its consideration of the issue of damages, and its Judgment is accordingly reversed.

The plaintiff argues that the master improperly excluded evidence that the plaintiff offered the Gassners $2,000 per acre for their ⅓ interest in the land. This offer was made after the Gassners had refused to sell under the contract signed by Touliatos. The offer resulted from a conversation between the realtor, Hudson, and the plaintiff's president, wherein the realtor asked what could the plaintiff do in an effort to settle the matter. The president of plaintiff replied that Hudson could offer the Gassners $2,000 per acre for their interest. The master held this to be an offer of compromise, and, therefore, inadmissible. The chancellor affirmed this ruling by the master. We agree.

Public policy favors the compromise of matters in dispute and demands that parties should not be prejudiced by their "bids for peace." The law protects these overtures of pacification as confidential and privileged matters which are to be encouraged and promoted. *Strong v. Stewart,* (1872) 56 Tenn. 137. See also: *Lewis v. Dixie-Portland Flour Mills, Inc.* (6th Cir. 1966) 356 F.2d 54; *Goodman v. Balthrop Const. Co.,* (Tenn.App.1981) 626 S.W.2d 21; *Sullivan v. Farragut Tire & Battery Co.,* (1921) 144 Tenn. 491, 234 S.W. 330; *Jackson v. Shill Oil Co.* (6th Cir.1968) 401 F.2d 639.

A material fact affecting the liability of the defendant Touliatos is the value of the land at the time of closing. This offer of compromise by the plaintiff to a co-defendant would be material evidence on that issue, and it was introduced into evidence for that purpose. When so introduced it is inadmissible. See: *Sullivan v. Farragut Tire & Battery Co., supra.*

The listing contract between Touliatos and the realtor stated that Touliatos would convey "or cause to be conveyed" the land in question. The plaintiff, not a party to that agreement, insists that it is entitled to damages against Touliatos because he failed to have the Gassners convey their ⅓ interest in the land. In support of this argument, the plaintiff cites *Cartwright v. Giacosa,* (Tenn.1965) 216 Tenn. 18, 390 S.W.2d 204.

In *Cartwright, supra,* the seller husband entered into a written contract with the buyer wherein the husband agreed to convey or "cause to be conveyed" the property in question. The buyer was ready to perform, but the husband refused on the ground that he and his wife owned the land as tenants by the entirety, and she refused to sell at the price agreed to. Under the facts, the *Cartwright* court held that specific performance would not be enforced against the wife, but remanded for a trial as to damages against the husband.

There is a very important distinction between *Cartwright, supra,* and the case at bar, namely, in *Cartwright, supra,* the seller contracted with the buyer and agreed to convey or "cause to be conveyed" the premises, whereas in the case at bar the seller contracted with the realtor to do the same thing. It might develop that under these circumstances the realtor would have a cause of action against the seller for the commission that would have been realized had the seller not breached his agreement. But we cannot justify a holding that the buyer, a stranger to the agreement, can claim any rights thereunder as third party beneficiary or otherwise. For the reasons stated, we affirm the court of appeals in its denial of damages due to the failure of Touliatos to have the Gassners convey their interest to the buyer.

## V. *Conclusions.*

It results that the Judgments of the chancery court and the court of appeals are reversed, and this lawsuit is to be dismissed. This cause is remanded to the chancery court for necessary orders concerning the guardian ad litem, the disposition of any funds in court, the collection of costs, and such other orders as necessary for a termination of the matter, and for a final decree dismissing this lawsuit.

The costs in the chancery court, the court of appeals and in this court are adjudged one-half against the plaintiff and one-half against the defendant Touliatos for which execution may issue, if necessary.

BROCK, C.J., and COOPER, HARBISON and DROWOTA, JJ., concur.